# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

In re:

Jill CLOW,

Debtor.

Case No. 17-13167 MER

Chapter 13

## DEBTOR'S MOTION FOR RECONSIDERATION OF RULINGS BASED ON AN ADVERSARIAL PROCEEDING

I, Jill Clow, Debtor, now as Pro Se, hereby make my Motion for Reconsideration of Rulings Based on an Adversarial Proceeding and in support thereof, state as follows:

1.  My prior counsel, John Scanlan, was allowed to withdraw on June 29, 2018, (although he never advised me of that release) determined that an Objection to the Proof of Claim, submitted by MTGLQ Investors, LP ("MTGLQ") followed by an Evidentiary Hearing was the proper process for this Court to review evidence to the contrary of that claim.

2.  While in the throws of evaluating the specifics of this case and responding to the Court's deadline on its Order to Show Cause with a new attorney, several things occurred:

    a)  Tim Bullock, the attorney in question, insisted that the response to Show Cause had to be filed on July 4, 2018, a holiday during which the Court was closed.

    b)  Without my authorization, without my review of the document that he had created and contrary to discussions of a strategic approach to the case,

Mr. Bullock simply filed his "Response to Order to Show Cause" into my case at 9:15pm on July 4th. In that document, Mr. Bullock requested an Adversarial Proceeding in lieu of the Evidentiary Hearing scheduled for July 26, 2018, which he felt would re-direct all parties into the proper venue in which to evaluate conflicting evidence in this case.

3. Mr. Bullock refused to use a document brought forth by MTGLQ's attorney, Nicholas Santarelli, which is an admission of fraud. On July 2, 2018, Mr. Santarelli recognized the fact that the Debtor did not have an attorney of record and sent the Debtor an email with an attached document entitled "Joint Statement of Stipulated Facts." (See Exhibit A).

4. Mr. Santarelli's document was never submitted to this Court, but makes significant statements that warrant review. In paragraph 3, Mr. Santarelli states, "On or about December 22, 2016, the ownership of the Note was transferred from Federal National Mortgage Association to MTGLQ Investors, L.P. ("Creditor"). At the time of the transfer of ownership of the Note, Debtor's loan was serviced by Nationstar Martgage, LLC."

5. That disclosure, unsolicited by me, is in direct conflict with the original Proof of Claim filed by MTGLQ on August 21, 2017, (see Exhibit B), the first Amended Proof of Claim filed on December 1, 2017, (see Exhibit C) and the second Amended Proof of Claim filed on March 6, 2018 (see Exhibit D). It does, however, re-affirm the filing I made to the Court on June 7, 2018, in which I submitted evidence of Fannie Mae's ownership of my Note from March 1, 2004 to December 22, 2016, and Nationstar's email and letters stating that they "serviced" the debt, but did not own my Note.

6. The "Joint Statement of Stipulated Facts" document although never submitted to this Court, holds significant influence over this case in that Ms. Leslie Leanhart of Selene Finance, L.P. filed the original Proof of Claim, Mr. Philip Stuart Traynor filed the first Amended Proof of Claim and Mr. Nicholas Santarelli filed the second Amended Proof of Claim under "penalty of perjury that the foregoing is true and correct." **To suddenly claim that MTGLQ transferred the Note from Fannie Mae, and not from Nationstar is evidence of perjury and shows that all three Proofs of Claim are perjured and the Assignments in those Proofs of Claim and on county records are fraudulent.**

7. The filing of a false Proof of Claim in a bankruptcy case is a crime under 18 U.S.C. §152 (4). Although the federal criminal statute prohibiting the falsifying of a proof of claim does not provide a party with a civil right of action, a bankruptcy court is empowered by 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carryout the provisions of this title." The statute specifically allows a bankruptcy court to take "any action . . . necessary or appropriate . ..to prevent an abuse of process."

8. The rights of a Note purchaser are obtained from the predecessor owner in accordance with **C.R.S. §4-3-203(b)** and would greatly affect the determination of MTGLQ's rights in this case:

> *(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, **but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.***

9. MTGLQ's purchase of a non-performing loan from Fannie Mae, would require a strict review by this Court of compiled evidence in order to determine whether this debt is secured or unsecured.

WHEREFORE, it is not my intention to continue down the previous path of Objections previously taken in front of this Court, nor to resolve any type of conflict with this single document, but rather, to reaffirm the need to move this type of evidence into the proper venue of an Adversarial Proceeding under which this Court may reconsider previously made rulings which were based upon fraudulent information.

Date:   July 24, 2018                    Respectfully Submitted,

/s/ Jill Clow

Jill Clow, Debtor
P.O. Box 880453
Steamboat Springs, CO     80488
970-846-0253

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Debtor's Motion for Reconsideration of Rulings Based on an Adversarial Proceeding was I-filed to Judge Romero at www.cob.uscourts.gov and sent via email or via U.S. Mail to all persons shown on the following service list on this 24th   day of July, 2018.

/s/ Jill Clow

Jill Clow, Debtor
P.O. Box 880453
Steamboat Springs, CO     80488
970-846-0253

Service List:

Nicholas H. Santarelli, Esq.
JANEWAY LAW FIRM, P.C.
9800 s. Meridian Blvd., Suite 400
Englewood, CO     80112

Adam Goodman
Standing Chapter 13 Trustee
P. O. Box 1169
Denver, CO     80201

US TRUSTEE
Byron G. Rogers Federal Building
1961 Stout St., Suite 12-200
Denver, CO     80294

## AFFIDAVIT OF JILL CLOW

I, Jill Clow, Debtor in Case 17-13167 – MER, being fully sworn, depose and say under penalty of perjury:

1.    I am over 18 years of age and have personal knowledge of the facts stated in this Affidavit.

2.    I am the Debtor in this case.

3.    On April 26, 2018, my previous attorney, John Scanlan went to the offices of Janeway Law Firm, LC in order to review the alleged "original" Note.   Scanlan took photos of the Note which MTGLQ, Investors, LP is showing as their *fourth version* of the original Note.   Each of the three prior "original notes" were materially different from each other.   Scanlan failed to ever send those photos to me - even though I am the only person who can testify as to the validity of MY SIGNATURE on that document.

4.    I noted that the "original note" looked like it was an altered document and was never filed of record.

5.    On a May 18th conference call with Scanlan, my Expert Witness (a Certified HUD counselor and Trusted Advisor to Fannie Mae), along with my sister (a banking consultant who now works in Real Estate), I was able to review the texted photos for the first time.

6.    Although I was unable to clearly view details of the Note in the texted message, I could still confidently state the following:

a) This version of the Note contained a fully legible undated, blank indorsement when all three (3) other alleged "original" Notes in each of the three Proofs of Claim submitted by MTGLQ were not at all legible, demonstrating that a fourth "original" Note was being alleged.

b)    My first observation was: *"It looks like my signature has been photo-shopped with blue ink."*

c)    This version of the Note was folded as though recently mailed in an envelope when none of the other versions showed any folds.

d)    This version of the Note was stapled when none of the other versions of the Note contained staples.

7.    On June 2, 2018, I received an email from Scanlan that he intended to withdraw from my case and that if I continued with the Evidentiary Hearing that he had previously structured and scheduled, I would be on my own.   Based on that email, I was fearful that Scanlan would not respond to the Court Order dated May 31, 2018, so on June 7th, 2018, I submitted my own response to the Court with the guidance of the Judicial Assistant, Deb.   In that response, I singled out an incorrect statement made on page 2 of the May 31st Order: *"The Court inquired with Debtor's counsel*

*whether Debtor disputes the authenticity of the Note, and Debtor's counsel acknowledged on the record that his client does not contest the authenticity of the Debtor's original signature appearing on the document"* to which I stated, "That statement is incorrect."

8.     I have never seen the unfiled, physical copy of this fourth "original" Note, nor have I been able to review my signature in person.   I could not verify my signature based on a text message of a photo taken by the attorney.   I never admitted that it was my signature on the fourth version of the Note and I believe the document was manufacured.   Thus, I have **NOT ACKNOWLEDGED** my signature on the fourth version of the "original" Note.

9.     The copy of the fourth "original" Note, upon which this Honorable Court based its decision that standing was present, is not in the docket of this case or of record.

10.    MTGLQ has never revised their first, their Amended nor their second Amended Proof of Claim to include a copy of this fourth version of the Note.

11.    On July 2, 2018, I personally received an email from Nicholas Santarelli, of Janeway Law Firm, PC with an attached document entitled, "Joint Statement of Stipulated Facts" (see Exhibit A).   In paragraph three of that document, Santarelli states, *"On or about December 22, 2016, the ownership of the Note was transferred from Federal National Mortgage Association to MTGLQ Investors, L.P. ("Creditor"). At the time of the transfer of ownership of the Note, Debtor's loan was serviced by Nationstar Mortgage, LLC."*

12.    That disclosure, unsolicited by me, is in direct conflict with both the original Proof of Claim filed by MTGLQ on August 21, 2017, the first Amended Proof of Claim filed on December 1, 2017, and the second Amended Proof of Claim filed on March 6, 2018.   It does, however, re-affirm the filing that I made on June 7, 2018, to the Court in which I submitted evidence of Fannie Mae's ownership of my Note from March 1, 2004 to December 22, 2016 and Nationstar's email and letters stating that they "serviced" the debt, but did not own my Note.

13.    MTGLQ is a "significant subsidiary" of Goldman Sachs and purchases Non-Performing Loans (NPL) in bulk, in a book-entry format used by Fannie Mae and Freddie Mac.   MTGLQ's Proof of Claim does not provide any documentation by which we can determine the "value" MTGLQ paid for the privilege to collect the debt.

14. The four "original" Notes herein are materially different from each other and at least three of these are manufactured and false, which appears to be an attempt to take this property as a result of fraud upon the court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, experience and belief.

Date: July 24, 2018

Name: _____

Jill Clow, Debtor

STATE OF COLORADO )

)ss:

COUNTY OF ROUTT )

BE IT KNOWN, that on this 24th day of July, 2018 before me, a Notary Public in and for the State and County aforesaid, duly commissioned and sworn, personally came and appeared $\underline{Jill \quad Clow}$ who $X$ did or ___ did not take an oath and produced proper identification.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my seal of office the day and year last above written.

NOTARY PUBLIC

Taylor Layne Prather

Printed Notary Name

My Commission Expires: $06/15/2021$

TAYLOR LAYNE PRATHER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174025328
MY COMMISSION EXPIRES 06/15/2021

Identification Produced: Colorado

$X$ License; ___ Passport  92-043-0503

___ Other:_____

EXHIBIT

A

Subject: **17**-13167 Stipulated Facts re 7/26 Evidentiary Hearing

From: nicksantarelli@janewaylaw.com

To: justjillclow@yahoo.com

Cc: angielebon@janewaylaw.com

Date: Monday, July 2, 2018, 6:45:28 PM EDT

Ms. Clow,

I have attached a draft of stipulated facts. Please review and let me know if there are any revisions you feel are necessary.

Thank you,

**Nick Santarelli**
Associate Attorney
Janeway Law Firm, P.C.
9800 S. Meridian Blvd., Suite 400
Englewood, CO 80112
303-706-9990 Office
303-706-9994 Fax
nicksantarelli@janewaylaw.com | www.janewaylaw.com

**THIS FIRM IS A DEBT COLLECTOR AND MAY BE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU ARE IN BANKRUPTCY OR THIS DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THE COLLECTION ACTION DESCRIBED IN THIS NOTICE SHALL BE AGAINST THE REAL PROPERTY THAT SECURES THE DEBT AND NOT AGAINST YOU PERSONALLY.**

This email, and any attachments thereto, is intended only for use by the addressee(**s**) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me at 303-706-9990 and permanently delete the original and any copy of any e-mail and any printout thereof.

 CLOW STIPULATED FACTS.pdf
84.1kB

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:                                                    Case No:      17-13167 – MER

JILL CLOW,
Debtor

                                                          Chapter       13

## JOINT STATEMENT OF STIPULATED FACTS

1. On or about February 27, 2004 Debtor Jill Clow ("Debtor") and Timothy A Reed
   executed a promissory note ("Note") in the amount of $333,000.00 in favor of GMAC
   Mortgage Corporation.

2. Said Note was secured by virtue of a deed of trust relating to the property located at
   50655 Semotan Drive, Steamboat Springs, CO 80487 signed by Debtor and Timothy A
   Reed, recorded in Routt County, Colorado on March 2, 2004 at reception number
   598549.

3. On or about December 22, 2016, the ownership of the Note was transferred from Federal
   National Mortgage Association to MTGLQ Investors, L.P. ("Creditor"). At the time of
   the transfer of ownership of the Note, Debtor's loan was serviced by Nationstar Mortgage
   LLC.

4. On or about February 21, 2017, the servicing rights of Debtor's mortgage were
   transferred from Nationstar Mortgage LLC to Selene Finance LP.

5. Debtor filed this Chapter 13 bankruptcy petition on April 10, 2017.

6. Creditor filed a proof of claim, claim no. 6-1, on August 21, 2017.

7. No other party in Debtor's bankruptcy has claimed to be entitled to enforce the Note.

8. Debtor filed an objection to Creditor's claim on November 1, 2017 disputing Creditor's
   standing as well as figures contained in the proof of claim. Creditor has since amended
   the proof of claim. Claim 6-3, filed on March 6, 2018, lists pre-petition arrears in the
   amount of $47,722.32 and a total debt amount of $301,857.43.

9. On May 23, 2018, the Court held a hearing to inspect the original Note executed by the Debtor. On May 31, 2018, after inspection of the Note, the Court Ordered that Creditor was a party in interest and entitled to enforce the Note.

10. The sole issues remaining in dispute for purposes of the evidentiary hearing scheduled for July 26, 2018, according to Debtor's objection to and motion to disallow proof of claim, are the application of funds to and from suspense and payments applied after the death of note and deed of trust co-signor Timothy A Reed.

Respectfully submitted this _____ day of July, 2018

Attorneys for MTGLQ INVESTORS, L.P.
JANEWAY LAW FIRM, P.C.

_____

Lynn M. Janeway #15592
David R. Doughty #40042
Elizabeth S. Marcus #16092
Alison L. Berry #34531
Nicholas H. Santarelli #46592
9800 S. Meridian Blvd., Suite 400
Englewood, CO 80112
Phone: (303) 706-9990
Fax: (303) 706-9994
bankruptcy@janewaylaw.com

Jill Clow

_____

PO Box 880453
Steamboat Springs, CO 80487

EXHIBIT

B

Fill in this information to identify the case:

Debtor 1     Jill Clow

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: District of Colorado

Case number   17-13167

# Official Form 410
# **Proof of Claim**

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Fliers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | MTGLQ Investors, L.P. |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor Selene Finance, LP |

2. Has this claim been acquired from someone else?

☑ No
☐ Yes. From whom? _____

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Selene Finance, LP
Name

9990 Richmond Avenue, Suite 400 South
Number   Street

Houston      TX      77042
City      State      ZIP Code

Contact phone 877-768-3759

Contact email _____

**Where should payments to the creditor be sent? (if different)**

Selene Finance, LP
Name

9990 Richmond Avenue, Suite 400 South
Number   Street

Houston      TX      77042
City      State      ZIP Code

Contact phone 877-768-3759

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

4. Does this claim amend one already filed?

☑ No
☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____
                                                     MM / DD / YYYY

5. Do you know if anyone else has filed a proof of claim for this claim?

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number you use to identify the debtor?
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 2 0 3 4

7. How much is the claim? $ _____ 301,900.79 . Does this amount include interest or other charges?
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

9. Is all or part of the claim secured?
☐ No
☑ Yes. The claim is secured by a lien on property.

Nature of property:
☑ Real estate. If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.
☐ Motor vehicle
☐ Other. Describe: 50655 SEMOTAN DR STEAMBOAT SPRINGS CO 80487

Basis for perfection: RECORDED DEED OF TRUST
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ _____
Amount of the claim that is secured: $ 301,900.79
Amount of the claim that is unsecured: $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ 47,765.68

Annual Interest Rate (when case was filed) 3.125 %
☑ Fixed
☐ Variable

10. Is this claim based on a lease?
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

11. Is this claim subject to a right of setoff?
☑ No
☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. Check one: | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  08/21/2017
                  MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Leslie Leanhart | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Bankruptcy Manager | | |
| Company | Selene Finance LP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 9990 Richmond Avenue, Suite 400 S: · '~ | | |
| | Number     Street | | |
| | Houston, TX 77042 | | |
| | City | State | ZIP Code |
| Contact phone | | Email | |

(Page 2 of 58)

Cop

# FIXED/ADJUSTABLE RATE NOTE

### (LIBOR One-Year Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

February 27, 2004     Steamboat Springs          , CO
      *[Date]*              *[City]*                *[State]*

            50655 Semotan Drive, Steamboat Springs, CO  80487
                         *[Property Address]*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 333,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

                         GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          4.750       %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on  April 1 2004 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on       March 1 2034        . I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50704-0780, ATTN: Payment Processing          or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,737.09          . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on on the first day of March,          2009 , and the adjustable interest rate I will pay may may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

LOAN NO :
MULTISTATE FIXED/ADJUSTABLE RATE NOTE -
WSJ One-Year LIBOR  Single Family - Fannie Mae
Uniform Instrument  Form 3528  6/01
*(Page 1 of 4)*     Initials: _____
GMACM-CNM.1379 (0204)

(Page 3 of 58)

Cop

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and 375/1000 percentage points ( 2.375 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 6.750 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.750 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change, and the amount of my monthly payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family – Fannie Mae Uniform Instrument Form 3528, 6/01
GMACM-CNM.1379 (0204)   (Page 2 of 4)   Initials: _____

(Page 4 of 50)

Cop

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family - Fannie Mae Uniform Instrument Form 3528 6/01
GMACM-CNM.1379 (0204)                                    (Page 3 of 4)                                    Initials: ____

(Page 5 of 58)

Cop

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Jill N. Clow                    -Borrower

_____ (Seal)
Timothy A. Reed                 -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

PAY TO THE ORDER OF

Limited Signing Officer

[Sign Original Only]

LOAN NO:
MULTISTATE ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR - Single Family – Fannie Mae Uniform Instrument Form 3528 6/01
GMACM-CNM.1379 (0204)                    (Page 4 of 4)

# EXHIBIT

C

| Fill in this information to identify the case: |
|---|

Debtor 1      Jill Clow

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  District of Colorado

Case number   17-13167

## Official Form 410
# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| 1. Who is the current creditor? | MTGLQ Investors LP |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor  Selene Finance, LP |

| 2. Has this claim been acquired from someone else? | ☑ No |
|---|---|
| | ☐ Yes. From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | | | Where should payments to the creditor be sent? (if different) | | |
|---|---|---|---|---|---|---|
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Selene Finance, LP | | | Selene Finance, LP | | |
| | Name | | | Name | | |
| | 9990 Richmond Avenue, Suite 400 South | | | 9990 Richmond Avenue, Suite 400 South | | |
| | Number    Street | | | Number    Street | | |
| | Houston | TX | 77042 | Houston | TX | 77042 |
| | City | State | ZIP Code | City | State | ZIP Code |
| | Contact phone 877-768-3759 | | | Contact phone 877-768-3759 | | |
| | Contact email _____ | | | Contact email _____ | | |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | | | | | |

| 4. Does this claim amend one already filed? | ☑ No | | | |
|---|---|---|---|---|
| | ☐ Yes.  Claim number on court claims registry (if known) 6-1 | | Filed on | 08/21/2017 |
| | | | | MM  / DD  / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
|---|---|
| | ☐ Yes.  Who made the earlier filing? _____ |

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 2 0 3 4 |

7. How much is the claim?    $ _____ 301,886.99 . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

9. Is all or part of the claim secured?

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:    50655 SEMOTAN DR STEAMBOAT SPRINGS CO 80487

Basis for perfection:    RECORDED DEED OF TRUST

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $ _____

Amount of the claim that is secured:    $ 301,886.99

Amount of the claim that is unsecured:  $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $ 47,751.88

Annual Interest Rate (when case was filed) 3.125 %

☑ Fixed

☐ Variable

10. Is this claim based on a lease?

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $ _____

11. Is this claim subject to a right of setoff?

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. Check one: | Amount entitled to priority |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  1-30-2017
                   MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | PHILIP STUART TRAYNOR | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | ATTORNEY | | |
| Company | MARINOSCI LAW GROUP P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 14643 DALLAS PARKWAY STE 750 | | |
| | Number        Street | | |
| | DALLAS TX 75254 | | |
| | City | State | ZIP Code |
| Contact phone | 972-331-2300 | Email | ecf@mlg-defaultlaw.com |

Case:17-13167-MER Doc#:136 Filed:07/25/18 Entered:07/25/18 13:23:55 Page25 of 37
Case 17-13167-MER Claim 6 Filed 12/01/17 Desc Main Document Page 8 of 55

(Page 2 of 68)

Cop

## FIXED/ADJUSTABLE RATE NOTE

(LIBOR One-Year Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

February 27, 2004     Steamboat Springs          , CO
        *[Date]*                                   *[City]*                    *[State]*

        50655 Samotan Drive, Steamboat Springs, CO 80487
                        *(Property Address)*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 333,000.00                     (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

                    GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        4.750        %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on April 1 2004 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      March 1 2034       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50704-0780, ATTN: Payment Processing                    or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $  1,737.09           . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on on the first day of March,               2009 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

LOAN NO:
MULTISTATE FIXED/ADJUSTABLE RATE NOTE -
WSJ One-Year LIBOR *Single Family—Fannie Mae*
Uniform Instrument  Form 3528  3/01
*(Page 1 of 4)*             Initials:
GMACM-CNM.1379 (0204)

Case:17-13167-MER Doc#:136 Filed:07/25/18 Entered:07/25/18 13:23:55 Page26 of 37
Case 17-13167-MER Claim 6 Filed 12/01/17 Desc Main Document Page 9 of 55

(Page 3 of 58)

Cop

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and 375/1000 percentage points ( 2.375 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 8.750 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.750 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change, and the amount of my monthly payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Case:17-13167-MER Doc#:136 Filed:07/25/18 Entered:07/25/18 13:23:55 Page27 of 37
Case 17-13167-MER Claim 6 Filed 12/01/17 Desc Main Document Page 10 of 55

(Page 4 of 56)

Cop

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

Cop

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Jill J. Clow                                -Borrower

_____ (Seal)
Timothy A. Reel                             -Borrower

_____ (Seal)
                                            -Borrower

_____ (Seal)
                                            -Borrower



PAY TO THE ORDER OF

Limited Signing Officer

*[Sign Original Only]*

LOAN NO:
MULTISTATE FIXED/ADJUSTABLE RATE NOTE – WSJ One-Year LIBOR – Single Family – Fannie Mae Uniform Instrument Form 3528 6/01
GMACM-CNM.1379 (0204)                       *(Page 4 of 4)*

EXHIBIT

D

| Fill in this information to identify the case: |
|---|

Debtor 1  JILL CLOW

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  District of Colorado
                                           (State)

Case number  17-13167-MER

## Official Form 410

## Amended Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1 | Identify the Claim | | |
|---|---|---|---|
| 1. | Who is the current creditor? | MTGLQ INVESTORS, L.P. | |
| | | Name of the current creditor (the person or entity to be paid for this claim) | |
| | | Other names the creditor used with the debtor | |
| 2. | Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? | |
| 3. | Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| | | Selene Finance, LP | Selene Finance, LP |
| | | Name | Name |
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | 9990 Richmond Avenue, Suite 400 | Attn: BK Dept.<br>9990 Richmond Avenue, Suite 400 |
| | | Number    Street | Number    Street |
| | | Houston, TX 77042 | Houston, TX 77042 |
| | | City    State    Zip Code | City    State    Zip Code |
| | | Contact phone 877-735-3637 | Contact phone 877-735-3637 |
| | | Contact email | Contact email |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | | - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | |
| 4. | Does this claim amend one already filed? | ☐ No<br>☒ Yes.  Claim number on court claims registry (if known) 6-2 | Filed on 12/01/2017<br>       MM / DD  / YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes.  Who made the earlier filing? | |

Official Form 410

Proof of Claim

Page 1

**Part 2**    Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 2034 Atty File #: 17-017225 |

| | | |
|---|---|---|
| **7. How much is the claim?** | $301,857.43 | Does this amount include interest or other charges?<br>☐ No<br>☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Mortgage Note/Loan

**9. Is all or part of the claim secured?**

☐ No
☒ Yes.   The claim is secured by a lien on property.

Nature of property:

☒ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____
50655 SEMOTAN DRIVE, STEAMBOAT SPRINGS, CO 80487

Basis for perfection: Deed of Trust recorded at office of Clerk and Recorder

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Estimated Value of property:        $_____

Amount of the claim that is secured:    $301,857.43

Amount of the claim that is unsecured: $_____        (The sum of the secured and unsecured amounts should match the amount in line 7)

Amount necessary to cure any default as of the date of the petition:    $47,722.32

Annual Interest Rate (when case was filed) 3.125%
☒ Fixed
☐ Variable

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☒ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☒ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                    Proof of Claim                    Page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No ☐ Yes. *Check all that apply* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (*up to $12,850\**) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_____) that applies. | $ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment

## Part 3  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor

☒ I am the creditor's attorney or authorized agent

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004

☐ I am a guarantor, surety, endorser, or other codebtor, Bankruptcy Rule 3005

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 3/6/18
                   MM / DD / YYYY

Signature _____

Print the name of the person who is completing and signing this claim:

| Name | Nicholas H. Santarelli #46592 | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney for Creditor | | |
| Company | Janeway Law Firm, P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer | | |
| Address | 9800 S. Meridian Blvd., Suite 400 | | |
| | Number | Street | |
| | Englewood, CO 80112 | | |
| | City | State | Zip Code |
| Contact Phone | (303) 706-9990 | Email bankruptcy@janewaylaw.com | |

# FIXED/ADJUSTABLE RATE NOTE

(LIBOR One-Year Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

February 27, 2004     Steamboat Springs          . CO
        *[Date]*                        *[City]*                           *[State]*

50655 Semotan Drive, Steamboat Springs, CO  80487
*[Property Address]*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 333,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      4.750      %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on April 1

2004 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      March 1

2034      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50704-0780, ATTN: Payment Processing                                 or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $  1,737.09          . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on on the first day of March,      2009 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE -
WSJ One-Year LIBOR Single Family – Fannie Mae
Uniform Instrument  Form 3528  6/01        253550465

*(Page 1 of 4)*      Initials:
GMACM-CNM.1379 (020-I)



### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Two and 375/1000
percentage points ( 2.375 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 6.750 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.750 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. and the amount of my monthly payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family - Fannie Mae Uniform Instrument Form 3528 6/04
GMACM-CNM.1379 (0204) (Page 2 of 4) Initials _____

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)     Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)     When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Jill X. Clow                        -Borrower

_____ (Seal)
Timothy A. Reed                     -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

[Sign Original Only]

United States Bankruptcy Court - District of Colorado
Online Filing Tool Submission

Document: 'Misc Document 1'  Submitted: 7/25/2018 8:42:01 AM
Document: 'Misc Document 2'  Submitted: 7/25/2018 8:42:01 AM
Document: 'Misc Document 3'  Submitted: 7/25/2018 8:42:01 AM

User Information

Jill Clow
50655 semotan dr., p.o.box 880453
Steamboat Springs
CO
80488

justjillclow@yahoo.com
970-846-0253