# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

In re:

Jill CLOW,

Debtor.

Case No. 17-13167 MER

Chapter 13

### DEBTOR'S OBJECTION TO MTGLQ INVESTORS' PROOF OF CLAIM

I, Jill Clow, Debtor, now as Pro Se, hereby make my Objections to MTGLQ's Proof of Claim and in support thereof, state as follows:

1.       My prior counsel, John Scanlan, allowed to withdraw on June 29, 2018, had determined that an Objection to the Proof of Claim, submitted by MTGLQ Investors, LP ("MTGLQ") followed by an Evidentiary Hearing was the proper process for this Court to review evidence to the contrary of that claim.    Unique to Mr. Scanlan's approach was that you never allow the opposing side to see the evidence that you have against their Proof of Claim until the Evidentiary Hearing is held.    That strategy was severely flawed since it generated conclusions by the Court that there was only one single issue that I raised regarding the illegible indorsement on the Note in that Proof of Claim, instead of all the issues to the "Objection" that I had gathered.    In this document, I will structure multiple pieces of evidence in support of my objections to MTGLQ's Proof of Claim.

2.       This Court is well aware of the three (3) sequential Proofs of Claim submitted by MTGLQ and their counsel.

3.       In their first Proof of Claim, filed by Selene Finance, Leslie Leanhart stated that "Money Loaned" was the basis for their claim (see Exhibit A:    1st POC).    MTGLQ never loaned any money to me.

1

4.      In their first Amended Proof of Claim, attorney Philip Traynor also stated that "Money Loaned" was the basis for their Amended Claim (see Exhibit B:    Amended POC). Again, no money was loaned to me by MTGLQ.

5.      In their second Amended (and final) Proof of Claim, Nicholas Santarelli stated that "Mortgage Note/Loan" was the basis for their claim (see Exhibit C:    2nd Amended POC).

*6.*      All three sequential Proofs of Claim state that the "basis for perfection" was a "Deed of Trust" or a "Recorded Deed of Trust" which does not speak to the purchase of, or ownership of, the debt.    The transfer of the Deed of Trust without the Note is a nullity - see *Carpenter v. Longan, 83 U.S. 271, 21 L. Ed. 313, 1872 U.S. L.E.X.I.S. 1157 (1873).*

7.      The conflicting, alleged assignments on county record and as exhibits in this Proof of Claim do not provide proof of validity to Claim #6.    An Assignment of a Deed of Trust is insufficient as a matter of law to transfer anything of value.   The Deed of Trust is not a negotiable instrument under **C.R.S. 4-3-104 (3).**    In *CO2016 14SC586 CO31, Liberty Mortgage Corp. v. Fiscus*, the Colorado Court of Appeals held that Article 3 does not apply to Deeds of Trust because they are not "negotiable instruments" as defined in the Code.

8.      None of MTGLQ's Proofs of Claim ever stated they had received the rights as a Creditor from an entity that had the rights of a Creditor.    They are not the original Creditor, GMAC Mortgage Corporation (GMAC), and their Proofs of Claim do not include any evidence of rights of the original Creditor passing over to MTGLQ.

9.       On January 20, 2017, MTGLQ sent me a Notice of Assignment, Sale or Transfer of Ownership of Mortgage Loan 15 U.S.C. §1641(g) in which they state, *"You are receiving this Notice because the ownership of your mortgage loan identified below has been sold, assigned or transferred to MTGLQ Investors, LP ("Covered Person") (see Exhibit D:    1/20/17 Letter).* Blacks' Dictionary defines a Mortgage Loan as, *"Secured under a mortgage agreement against real property this is an advanced loan installment"* which I have never had with

MTGLQ.    First of all, the loan was made in 2004 by GMAC.    We are now dealing with a

Deed of Trust and a Promissory Note - neither of which is a Mortgage Loan.    Second of all,

MTGLQ is unclear as to whether or not there was a sale, an assignment or a transfer of some

type of document, but they failed to state which document was affected.    They are unclear

as to which type of transaction was made and each of the three transactions (sale,

assignment or transfer) are uniquely distinct.    Here, I have no way of knowing what type of

ownership MTGLQ is claiming, and the rights they may be entitled to, derive from that

transaction.

**10.**      Documentation attached to Claim #6 does not entitle MTGLQ to enforce the Note.

MTGLQ does not hold the Note as a Holder-in-due-Course because the Note was allegedly

transferred while, according to the accounting provided by MTGLQ/ Selene, it was knowingly

overdue.    According to **C.R.S. 4-3-302 (a) (2):    Holder in due Course:**

> *(2)* **the holder took the instrument (i) for value, (ii) in good faith, (iii)**
> **without notice that the instrument is overdue** *or has been dishonored or*
> *that there is an uncured default with respect to payment of another*
> *instrument issued as part of the same series, (iv) without notice that the*
> *instrument contains an unauthorized signature or has been altered, (v)*
> *without notice of any claim to the instrument described in Section 4-3-306,*
> *and (vi) without notice that any party has a defense or claim in*
> *recoupment described in Section 4-3-305(a).*

**11.**      MTGLQ has never made the claim that they have purchased my debt, nor have they

provided evidence of that purchase in the form of a receipt, wire transfer or other form of

receipt for payment, so there is no evidence that the Note "**was taken for value."**

12.      MTGLQ's Proof of Claim, submitted into this bankruptcy on March 6, 2018,

indicates that MTGLQ was fully aware that the **"instrument was overdue."**    See the

following pages of MTGLQ's second Amended Proof of Claim (Exhibit C):

> a)   Page 2:   "Amount necessary to cure any default as of the date of the petition:
> $47,722.32."

b) Page 4:   "Total Pre-Petition Arrearages:   $47,722.32."

**13.**      At this point MTGLQ is not a Holder-in-due-Course (HIDC) and therefore, I have a

right to defend against their claim - which allows me to go forward with my Objection.

According to **C.R.S. 4-3-305:**

> *(2) A defense of the obligor stated in another section of this article or a defense of*
> *the obligor that would be available if the person entitled to enforce the instrument*
> *were enforcing a right to payment under a simple contract;*

14.      Since a previous holder can only pass along the rights that they are entitled to, no

other entity can obtain the rights **that a previous holder had** as these rights cannot be

passed on by entities that have not acquired the HIDC status.

15.      Nationstar Mortgage, LLC (Nationstar) through their own admission on numerous

occasions has stated that they did not own the Note or the Deed of Trust, but were the

Servicer for the Noteholder (see Exhibit E:   Fannie Mae Ownership Documents).    A person

who has no title cannot pass a title on.    Thus, a thief cannot pass legal title on to a good

faith purchaser.

16.      The rights of a Note purchaser are obtained from the predecessor owner in

accordance with **C.R.S. §4-3-203(b),** (often referred to as the Shelter Rule) and would greatly

affect the determination of MTGLQ's rights in this case:

> *(b)  Transfer of an instrument, whether or not the transfer is a negotiation, vests in*
> *the transferee any right of the transferor to enforce the instrument, including any*
> *right as a holder in due course, **but the transferee cannot acquire rights of a holder***
> ***in due course by a transfer, directly or indirectly, from a holder in due course if the***
> ***transferee engaged in fraud or illegality affecting the instrument.***

17.      While the UCC recognizes the rights of a transferee in possession, the burden of

proving "transfer" is on the person holding the instrument, including proving the validity of

previous transfers.    According to one court, "the transferee does not enjoy the statutorily

provided assumption of the right to enforce the instrument that accompanies a negotiated

instrument."   The possessor of the note must prove both the fact of delivery and the purpose of the delivery to qualify as "person entitled to enforce."   Otherwise, a UPS driver, or even Mr. Santarelli, could appear in Court making a Proof of Claim as "holders" who are really "custodians" of the numerous Notes that they have in their "possession" as a function of their jobs.

18.     Each Proof of Claim contains an illegible copy of a copy of my Promissory Note with a smudge instead of an indorsement.   As discussed in my previous pleading, "Rebuttal to Motion to Abandon," I outlined the **best evidence rule** as a legal principle that holds an original copy of a document as superior evidence.   The rule specifies that secondary evidence, such as a copy or facsimile, will not be admissible if an original document exists and can be obtained.   MTGLQ is an entity who has submitted copies of copies in their Proofs of Claim which should not be admitted as evidence in their Proof of Claim.

19.     While it is true that on May 23, 2018, MTGLQ's counsel, Mr. Santarelli, brought into Court a fourth version of my Note, it is also true that a copy of that fourth Note was never submitted into evidence in any Proof of Claim, nor in any other visible form of documented evidence.

20.     On or about March 1, 2004, the acquisition date, as related to me by Fannie Mae, the ownership of the Note and Deed of Trust were transferred from GMAC Mortgage Corporation to Fannie Mae, and held through December 22, 2016, the liquidation date.   My Note was serviced by Nationstar during that entire time period (see Exhibit F:   Fannie Mae email).

21.     The Note was altered by a modification authorized by Fannie Mae in February 2012, rendering the original Note modified and the original terms of the Note null and void. The modified terms of the Note are enforceable until 2052 and the original Note is unenforceable.

22.      The modified terms of my Note were based on a monthly payment of $1,004.29 at

an interest rate of 3.125%.   The Payment Loan History included in MTGLQ's Proof of Claim

does not accurately document the modified payment structure authorized by Fannie Mae

through Nationstar:

   a)   The "header" page of the Payment Loan History in each of the three Proofs of

   Claim contains the same information with the exception of the categories titled

   "Less Funds on Hand" and "Monthly Escrow."

   b)   The "Total monthly payment" amount taken from each header page does not

   match the "Contractual payment amount" in column B, nor is the "Contractual

   payment amount" consistent across all three (3) Proofs of Claim.

   c)   The Date of Default ("Payment Loan History from First Date of Default ) in

   column A is shown as 3/1/13 in the first Proof of Claim and in the Amended Proof of

   Claim.   However, in the second Amended Proof of Claim and in Mr. Santarelli's

   7/23/18 "Response to Debtor's Response to Order to Show Cause" the date of

   default is shown as being 2/1/13.   However, none of these dates match the date

   of default indicated in the letter that I received from Nationstar on May 31, 2013,

   which indicates that the actual date of default was 4/1/2013 (see Exhibit G:

   Nationstar 5/31/13 Letter).

   d)   The Payment Loan History taken from Nationstar's 2/1/17 Proof of Claim in my

   Wyoming bankruptcy indicates a credit of $7,337.33 on 7/26/17.   That credit is

   missing on all three (3) of MTGLQ's Payment Loan History documents.    In addition,

   Nationstar's Payment Loan History indicates "Forbearance" payments, adjustments

   and suspensions, eleven (11) entries during August 2016 totaling -$73.81, which are

   not indicated on any of the MTGLQ Payment Loan History documents (see Exhibit

   H:   Nationstar WY POC).

e)   MTGLQ provides no explanation for suspended payments.

23.      Debtor believes that after three (3) attempts at providing an accurate Payment

Loan History, MTGLQ should be restricted from providing, yet another, "corrected" Payment

Loan History or Amended Proof of Claim.

24.      On August 9, 2018, I went to Janeway Law Firm with my Certified Forensic

Document Examiner, Kathy Carlson CFDE, CQDE.    While Mr. Santarelli accommodated Mrs.

Carlson's requests on-site, he adamantly denied me the opportunity to make a photocopy of

the Note in question, stating "you have numerous copies of this Note already."    In addition,

Mr. Santarelli refused to allow Mrs. Carlson to remove the staple in the upper left hand

corner of the document because the Notes in the Proofs of Claim are not stapled and this

Note is.

25.       On August 15th, Mrs. Carlson sent an email to Mr. Santarelli requesting a "first

generation photocopy of the pages of that original document" for her final report.    Mr.

Santarelli emailed a redacted copy of the Note with an illegible indorsement - not at all the

copy that she had requested.    In addition, the redacted version of the Note showed no

folded back pages (which would be seen if the staple was not removed) and no tri-folds from

having been sent in an envelope, like the one in his office had.    We were not allowed to see

the envelope that the Note had been sent in for arrival to Mr. Santarelli's office.

26.      On August 8th, after scheduling an appointment with Janeway Law Firm to view the

Note in question, scheduling Mrs. Carlson's air travel and a pick-up from her hotel following

another court case, as well as coordinating my work schedule at two (2) jobs and my 4-hour

drive from Steamboat Springs, Mr. Santarelli initiated numerous road-blocks to our pre-set

appointment.    First he required both a name and CV from my Document Expert.    After that

documentation was provided, Mr. Santarelli was then upset that I had contacted his office to

advise them when we would be there - instead of calling and asking their permission and

what times might be available on their schedule.    As the final attempted road-block, Mr.

Santarelli then stated that we would have to leave his office by 2:45pm due to an

appointment that he had at 3:00pm and that we would have to re-schedule a return visit,

which would have required another airfare and possible hotel expenses.    When I told him

that his attendance was not a requirement during the viewing, he responded that his

attendance was a requirement because he was the "custodian" of the Note.

27.        Although he was not successful in stopping our review of the Note, I am now

requesting that this Honorable Court **sanction** Mr. Santarelli for attempting to impede the

viewing of my Note as ordered by this Court on July 26, 2018, and for not allowing a

photocopy of that Note to be taken on-site or forwarded via mail to my Document Expert.

His actions were egregious and added tremendous stress to an already stressful situation.

28.        On that fourth version of my Note, a **rubber-stamped** indorsement now reads:

> Pay to the Order of
>
> _____
>
> Without Recourse
> GMAC Mortgage Corporation,
> By:    *D. Harkness*
> 　　D. Harkness
> 　　Limited Signing Officer

29.        Mrs. Carlson, my Document Expert, did confirm to me that the indorsement and

signature were a single rubber-stamped indorsement.    Since there is no pen-ink signature

by a human being, and no date on this indorsement, this rubber-stamped indorsement could

have been made by anyone - without the knowledge of D. Harkness.

30.        Rubber-stamped indorsements require proof that they are not fabricated.    This

rubber-stamped indorsement falls under Colorado Rules of Evidence 802, the Hearsay Rule:

*"Hearsay is not admissible except as provided by these rules or by the civil and criminal*

*procedural rules applicable to the courts of Colorado or by any statutes of the State of*

*Colorado."*   Hearsay evidence cannot be cross-examined, so it can provide an unfair advantage to a prosecutor in a case, while violating a Debtor's right to confront those who are providing testimony against her.

31.   MTGLQ was not a creditor in my Wyoming bankruptcy.   A review of the Proof of Claim submitted by Nationstar in that case is warranted here as it will show that MTGLQ did not receive any rights as a Creditor from Nationstar who was a Servicer and custodian of the documents (see Exhibit H:   Nationstar WY POC).

32.   Two items are of particular interest in Nationstar's Proof of Claim dated December 1, 2016:

>   a)   First of all, the copy of the alleged Note submitted by Nationstar contains a similar smudge as was contained on each of MTGLQ's Proofs of Claim submitted into this Colorado case.   The smudge is not fully legible.   No copy of a legible indorsement was included.   Therefore, no copy of the 揢 riginal?fourth version of the Note was a part of Nationstar's Proof of Claim either.

>   b)   Second, on page four (4) is the Notice by Nationstar stating:

>>   *揘ationstar Mortgage services the loan on the property reference in this Proof of Claim. ..Noteholder, directly, or through an agent has possession of the promissory note.   The promissory note is either made payable to Noteholder, or has been duly endorsed.   Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan."*

*33.*   This Proof of Claim was filed just 21 days prior to the date that MTGLQ claims, *"the ownership of the Note was transferred from Nationstar to MTGLQ Investors, LP."*

34.   If the ownership had actually transferred from Nationstar to MTGLQ on December 22, 2016, then MTGLQ's Proof of Claim of ownership should have been submitted as a substitute for Nationstar's Proof of Claim to the Wyoming bankruptcy.   No Proof of Claim was ever submitted by MTGLQ into my Wyoming bankruptcy case.

35.     On July 2, 2018, Mr. Santarelli recognized the fact that the Debtor did not have an attorney of record and sent me an email with an attached document entitled "Joint Statement of Stipulated Facts." (See Exhibit I).    That document is an admission that they have no idea where the Note came from and are unable to provide this Court with evidence that they are a Creditor.

*36.*     Mr. Santarelli's "Stipulation" was never submitted to this Court, but makes significant statements that warrant review.    In paragraph 3, Mr. Santarelli states, *"On or about December 22, 2016, the ownership of the Note was **transferred** from Federal National Mortgage Association to MTGLQ Investors, L.P. ("Creditor").    At the time of the **transfer of ownership** of the Note, Debtor's loan was serviced by Nationstar Mortgage, LLC."*

37.     That disclosure, unsolicited by me, is in direct conflict with the original Proof of Claim filed by MTGLQ on August 21, 2017, (see Exhibit A), the first Amended Proof of Claim filed on December 1, 2017, (see Exhibit B) and the second Amended Proof of Claim filed on March 6, 2018 (see Exhibit C).    It does, however, re-affirm the evidence that I have previously submitted to the Court of Fannie Mae's ownership of my Note from March 1, 2004, to December 22, 2016, and Nationstar's email and letters stating that they "serviced" the debt, but did not own my Note (see Exhibit E).

38.     The "Joint Statement of Stipulated Facts" document although never submitted to this Court, holds significant influence over this case in that Ms. Leslie Leanhart of Selene Finance, L.P. filed the original Proof of Claim, Mr. Philip Stuart Traynor filed the first Amended Proof of Claim and Mr. Nicholas Santarelli filed the second Amended Proof of Claim under "penalty of perjury that the foregoing is true and correct."    **To suddenly claim that the Note was "transferred" from Fannie Mae to MTGQ, and not from Nationstar is evidence of perjury and shows that all three Proofs of Claim are perjured and the Assignments in those Proofs of Claim and on county records are suspect.**

39.      The filing of a false Proof of Claim in a bankruptcy case is a crime under 18 U.S.C. §§152, 157, 3571.

**40.**    On the first page of the Proof of Claim form (Official Form 410) paragraph 3 of the initial text and on page three, just to the left of the statement, *"I declare under penalty of perjury that the foregoing is true and correct"* it clearly states in bold print, **"A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.   U.S.C. 18 §§152, 157, 3571."**

41.       Although the federal criminal statute prohibiting the falsifying of a proof of claim does not provide a party with a civil right of action, a bankruptcy court is empowered by 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carryout the provisions of this title."   The statute specifically allows a bankruptcy court to take "any action . . . necessary or appropriate . ..to prevent an abuse of process."

THEREFORE, I reiterate here why Proof of Claim #6, submitted in this case by MTGLQ, is not a valid Proof of Claim and MTGLQ should be rejected as a Creditor for the following reasons:

**a)**    MTGLQ has never made the claim that they have purchased my debt, nor have they provided evidence of that purchase in the form of a receipt, wire transfer or other form of receipt for payment, so there is no evidence that the Note "**was taken for value."**

b)    MTGLQ was fully aware that the **"instrument was overdue."**

c)    Based on paragraph a and b above, MTGLQ is not a HIDC.   Thus, they are responsible for outlining the entire chain of indorsements for my Promissory Note and chain of title for my Deed of Trust prior to determination of their rights regarding each instrument.

d)  MTGLQ has never submitted the alleged "original" Note in any Proof of Claim;

e)  The current indorsement on the fourth version of the Note is not admissible in this Court due to the Hearsay Rule;

f)  MTGLQ's Proof of Claim fails to provide any evidence regarding the "fact of delivery" and the "purpose of the delivery" to qualify as "person entitled to enforce."

g)  MTGLQ has provided incorrect Payment Loan History and has provided two (2) incorrect dates of default;

h)  MTGLQ has now provided not only conflicting, but perjured documentation into this Court by submitting two (2) very distinct claims regarding how they obtained the Note and Deed of Trust;

WHEREFORE, I, Jill Clow, request that this Honorable Court take necessary and appropriate action to prevent an abuse of process with this faulty Proof of Claim and refer this perjurous activity to the U.S. Attorney for further prosecution.


Date:   August 24, 2018                          Respectfully Submitted,

                                                 /s/ Jill Clow

                                                 _____

                                                 Jill Clow, Debtor
                                                 P.O. Box 880453
                                                 Steamboat Springs, CO      80488
                                                 970-846-0253

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Debtor's Objection to MTGLQ's Proof of Claim was I-filed to Judge Romero at www.cob.uscourts.gov and sent via email or via U.S. Mail to all persons shown on the following service list on this 24th day of August, 2018.

/s/ Jill Clow

_____

Jill Clow, Debtor
P.O. Box 880453
Steamboat Springs, CO      80488
970-846-0253

**Service List:**

Nicholas H. Santarelli, Esq.
JANEWAY LAW FIRM, P.C.
9800 s. Meridian Blvd., Suite 400
Englewood, CO     80112

Adam Goodman
Standing Chapter 13 Trustee
P.  O. Box 1169
Denver, CO     80201

US TRUSTEE
Byron G. Rogers Federal Building
1961 Stout St., Suite 12-200
Denver, CO      80294

# EXHIBIT

A

Fill in this information to identify the case:

Debtor 1    Jill Clow

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   District of Colorado

Case number   17-13167

## Official Form 410

# **Proof of Claim**

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

| 1. Who is the current creditor? | MTGLQ investors, L.P. |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor  Selene Finance, LP |

| 2. Has this claim been acquired from someone else? | ☑ No |
| --- | --- |
| | ☐ Yes. From whom? |

| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- | --- |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Selene Finance, LP | Selene Finance, LP |
| | Name | Name |
| | 9990 Richmond Avenue, Suite 400 South | 9990 Richmond Avenue, Suite 400 South |
| | Number     Street | Number     Street |
| | Houston     TX     77042 | Houston     TX     77042 |
| | City     State     ZIP Code | City     State     ZIP Code |
| | Contact phone 877-768-3759 | Contact phone 877-768-3759 |
| | Contact email | Contact email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |

| 4. Does this claim amend one already filed? | ☑ No | | |
| --- | --- | --- | --- |
| | ☐ Yes. Claim number on court claims registry (if known) | Filed on | MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
| --- | --- |
| | ☐ Yes. Who made the earlier filing? |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __2__ __0__ __3__ __4__

**7. How much is the claim?**

$_____ 301,900.79 . Does this amount include interest or other charges?

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

Nature of property:

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle
☐ Other. Describe: 50655 SEMOTAN DR STEAMBOAT SPRINGS CO 80487

Basis for perfection: RECORDED DEED OF TRUST

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $ 301,900.79

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ 47,765.68

Annual Interest Rate (when case was filed) 3.125 %
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. Check one: | | Amount entitled to priority |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $ _____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  08/21/2017
                  MM / DD / YYYY

_Signature_

Print the name of the person who is completing and signing this claim:

| Name | Leslie Leonhart | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Bankruptcy Manager | | |
| Company | Selene Finance LP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 9990 Richmond Avenue, Suite 400 S | | |
| | Number   Street | | |
| | Houston  TX  77042 | | |
| | City | State | ZIP Code |
| Contact phone | _____ | Email | |

## Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Cause No: 17-13167 | | Principal Balance: | $265,662.68 | Principal & interest due: | $31,132.99 | Principal & interest | $1,004.29 |
| Debtor 1: JN Clow | | Interest Due: | $21,255.60 | Prepetition fees due: | $8,935.97 | Monthly escrow: | $260.09 |
| Debtor 2: ___ | | Fees, costs due: | $8,935.97 | Escrow deficieny for funds advanced: | $6,091.99 | Private Mortgage Insurance: | $0.00 |
| | | Escrow deficiency for funds advanced: | $6,091.99 | Projected Escrow Shortage: | $1,650.18 | Total monthly payment: | $1,264.38 |
| Last four digits to identify: 2034 | | | | | | | |
| Creditor: MTGLQ Investors, L.P. | | Less total funds on hand: - | $45.45 | Less funds on hand: - | $45.45 | | |
| Servicer: Selene Finance LP | | Total debt: | $301,900.79 | Total Prepetition Arrearage: | $47,765.68 | | |

Fix Accrual/Daily simple interest/other 3.125 FIXED

### Part 5: Payment Loan History form First Date of Default

| | | Account History | | | | | | How Funds Were Applied/Amount Incurred | | | | Balance After Amount Received or Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount Principal | I. Amount to Interest | J. Escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance | P. Fees/Charges Balance | Q. Unapplied Funds Balance |
| | | | | | | | | | | | | | | (Beginning Balances) | | |
| 03/01/13 | $1,255.67 | | | PAYMENT DUE | | $1,255.67 | | | | | | $271,744.23 | $3,229.78 | $0.00 | $0.00 | $0.00 |
| 03/27/13 | | | | PAYMENT RECEIVE | 3/1/2013 | $1,255.67 | $296.62 | $707.67 | $274.54 | | | $271,744.23 | $3,229.76 | $0.00 | $0.00 | $0.00 |
| 03/29/13 | | $1,278.83 | | PAYMENT RECEIVE | 4/1/2013 | -$23.16 | $297.40 | $706.89 | $274.54 | | | $271,447.61 | $3,504.32 | $0.00 | $0.00 | $0.00 |
| 03/29/13 | | | | $9.15 PROPERTY INSPECTION | | -$23.16 | | | | | $9.15 | $271,150.21 | $3,778.86 | $0.00 | $0.00 | $0.00 |
| 04/01/13 | $1,258.92 | | | PAYMENT DUE | | $1,235.76 | | | | | | $271,150.21 | $3,778.86 | $9.15 | $0.00 | $0.00 |
| 05/01/13 | $1,258.92 | | | PAYMENT DUE | | $2,494.68 | | | | | | $271,150.21 | $3,778.86 | $9.15 | $0.00 | $0.00 |
| 05/17/13 | | | | $53.89 COUNTY TAX DISB | | $2,494.68 | | | -$53.89 | | | $271,150.21 | $3,724.97 | $9.15 | $0.00 | $0.00 |
| 05/17/13 | | | | $817.78 COUNTY TAX DISB | | $2,494.68 | | | -$817.78 | | | $271,150.21 | $2,907.19 | $9.15 | $0.00 | $0.00 |
| 06/01/13 | $1,258.92 | | | PAYMENT DUE | | $3,753.60 | | | | | | $271,150.21 | $2,907.19 | $9.15 | $0.00 | $0.00 |
| 06/27/13 | | | | $9.15 PROPERTY INSPECTION | | $3,753.60 | | | | | $9.15 | $271,150.21 | $2,907.19 | $18.30 | $0.00 | $0.00 |
| 07/01/13 | $1,258.92 | | | PAYMENT DUE | | $5,012.52 | | | | | | $271,150.21 | $2,907.19 | $18.30 | $0.00 | $0.00 |
| 07/05/13 | | $1,258.92 | | PAYMENT RECEIVE | 5/1/2013 | $3,753.60 | $298.17 | $706.12 | $254.63 | | | $270,852.04 | $3,161.82 | $18.30 | $0.00 | $0.00 |
| 07/05/13 | | $1,258.92 | | PAYMENT RECEIVE | 6/1/2013 | $2,494.68 | $298.95 | $705.34 | $254.63 | | | $270,553.09 | $3,416.45 | $18.30 | $0.00 | $0.00 |
| 07/05/13 | | | | REFUND ESCROW | | $2,494.68 | | | $53.89 | | | $270,553.09 | $3,470.34 | $18.30 | $0.00 | $0.00 |
| 08/01/13 | $1,258.92 | | | PAYMENT DUE | | $3,753.60 | | | | | | $270,553.09 | $3,470.34 | $18.30 | $0.00 | $0.00 |
| 09/01/13 | $1,258.92 | | | PAYMENT DUE | | $5,012.52 | | | | | | $270,553.09 | $3,470.34 | $18.30 | $0.00 | $0.00 |
| 10/01/13 | $1,258.92 | | | PAYMENT DUE | | $6,271.44 | | | | | | $270,553.09 | $3,470.34 | $18.30 | $0.00 | $0.00 |
| 10/09/13 | | | $918.75 | FC FEES | | $6,271.44 | | | | $918.75 | | $270,553.09 | $3,470.34 | $987.05 | $0.00 | $0.00 |
| 10/09/13 | | | $310.00 | FC COSTS | | $6,271.44 | | | | $310.00 | | $270,553.09 | $3,470.34 | $1,247.05 | $0.00 | $0.00 |
| 10/09/13 | | | $230.00 | FC COSTS | | $6,271.44 | | | | $230.00 | | $270,553.09 | $3,470.34 | $1,477.05 | $0.00 | $0.00 |
| 11/01/13 | $1,258.92 | | | PAYMENT DUE | | $7,530.36 | | | | | | $270,553.09 | $3,470.34 | $1,477.05 | $0.00 | $0.00 |
| 11/25/13 | | | $15.00 | PROPERTY INSPECTION | | $7,530.36 | | | | $15.00 | | $270,553.09 | $3,470.34 | $1,492.05 | $0.00 | $0.00 |
| 11/27/13 | | | $9.20 | FC COSTS | | $7,530.36 | | | | $9.20 | | $270,553.09 | $3,470.34 | $1,501.25 | $0.00 | $0.00 |
| 11/27/13 | | | $120.00 | FC COSTS | | $7,530.36 | | | | $120.00 | | $270,553.09 | $3,470.34 | $1,621.25 | $0.00 | $0.00 |
| 11/27/13 | | | $400.00 | FC COSTS | | $7,530.36 | | | | $400.00 | | $270,553.09 | $3,470.34 | $2,021.25 | $0.00 | $0.00 |
| 12/01/13 | $1,258.92 | | | PAYMENT DUE | | $8,789.28 | | | | | | $270,553.09 | $3,470.34 | $2,021.25 | $0.00 | $0.00 |

| Date | | | Description | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/26/13 | | | $12.00 PROPERTY INSPECTION | $8,789.28 | | | | | $12.00 | $270,553.09 | $3,470.34 | $2,033.25 | $0.00 |
| 12/27/13 | | $923.49 | PARTIAL PAYMENT | $7,865.79 | | | | | | $923.49 $270,553.09 | $3,470.34 | $2,033.25 | $923.49 |
| 03/01/14 | $1,258.92 | | PAYMENT DUE | $9,124.71 | | | | | | $270,553.09 | $3,470.34 | $2,033.25 | $923.49 |
| 01/22/14 | | $335.43 | PAYMENT RECEIVE | 7/1/2013 | $8,789.28 | $299.72 | $706.57 | $254.63 | -$923.49 | $270,553.37 | $3,724.97 | $2,039.25 | $923.48 |
| 01/28/14 | | $1,258.92 | PAYMENT RECEIVE | 8/1/2013 | $7,530.36 | $300.51 | $703.78 | $254.63 | | $269,952.86 | $3,979.60 | $2,039.25 | $0.00 |
| 02/01/14 | $1,258.92 | | PAYMENT DUE | $8,789.28 | | | | | | $269,952.86 | $3,979.60 | $2,039.25 | $0.00 |
| 02/03/14 | | | $714.40 COUNTY TAX DISB | $8,789.28 | | | | -$714.40 | | $269,952.86 | $3,265.20 | $2,033.25 | $0.00 |
| 02/13/14 | | | $1,525.00 HAZARD INS DISB | $8,789.28 | | | | -$1,525.00 | | $269,952.86 | $1,740.20 | $2,033.25 | $0.00 |
| 02/13/14 | | | $1,274.77 HAZARD INS DISB | $8,789.28 | | | | -$1,274.77 | | $269,952.86 | $465.43 | $2,033.25 | $0.00 |
| 03/01/14 | $1,258.92 | | PAYMENT DUE | $10,048.20 | | | | | | $269,952.86 | $465.43 | $2,033.25 | $0.00 |
| 04/01/14 | $1,258.92 | | PAYMENT DUE | $11,307.12 | | | | | | $269,952.86 | $465.43 | $2,033.25 | $0.00 |
| 04/23/14 | | | -$15.75 FC FEES | $11,307.12 | | | | | -$15.75 | $269,952.86 | $465.43 | $2,017.50 | $0.00 |
| 05/01/14 | $1,250.44 | | PAYMENT DUE | $12,557.56 | | | | | | $269,952.86 | $465.43 | $2,017.50 | $0.00 |
| 05/16/14 | | | $714.40 COUNTY TAX DISB | $12,557.56 | | | | -$714.40 | | $269,952.86 | -$248.97 | $2,017.50 | $0.00 |
| 05/16/14 | | | $714.40 COUNTY TAX DISB | $12,557.56 | | | | -$714.40 | | $269,952.86 | -$963.37 | $2,017.50 | $0.00 |
| 06/01/14 | $1,250.44 | | PAYMENT DUE | $13,808.00 | | | | | | $269,952.86 | -$963.37 | $2,017.50 | $0.00 |
| 06/16/14 | | | $300.00 BK FEES | $13,808.00 | | | | | $300.00 | $269,952.86 | -$963.37 | $2,317.50 | $0.00 |
| 06/25/14 | | | $6.00 FC COSTS | $13,808.00 | | | | | $6.00 | $269,952.86 | -$963.37 | $2,323.50 | $0.00 |
| 06/25/14 | | | $1,012.13 FC COSTS | $13,808.00 | | | | | $1,012.13 | $269,952.86 | -$963.37 | $3,335.63 | $0.00 |
| 07/01/14 | $1,250.44 | | PAYMENT DUE | $15,058.44 | | | | | | $269,952.86 | -$963.37 | $3,335.63 | $0.00 |
| 07/14/14 | | | $300.00 BK FEES | $15,058.44 | | | | | $300.00 | $269,952.86 | -$963.37 | $3,635.63 | $0.00 |
| 07/24/14 | | | $15.00 PROPERTY INSPECTION | $15,058.44 | | | | | $15.00 | $269,952.86 | -$963.37 | $3,650.63 | $0.00 |
| 08/01/14 | $1,250.44 | | PAYMENT DUE | $16,308.88 | | | | | | $269,952.86 | -$963.37 | $3,650.63 | $0.00 |
| 08/19/14 | | | $350.00 BK FEES | $16,308.88 | | | | | $350.00 | $269,952.86 | -$963.37 | $4,000.63 | $0.00 |
| 09/01/14 | $1,250.44 | | PAYMENT DUE | $17,559.32 | | | | | | $269,952.86 | -$963.37 | $4,000.63 | $0.00 |
| 10/01/14 | $1,250.44 | | PAYMENT DUE | $18,809.76 | | | | | | $269,952.86 | -$963.37 | $4,000.63 | $0.00 |
| 10/14/14 | $6,027.76 | | PARTIAL PAYMENT | $12,782.00 | | | | | $6,027.76 | $269,952.36 | -$963.37 | $4,000.63 | $6,027.76 |
| 10/30/14 | | | REVERSAL PAYMENT | $12,782.00 | | | | | -$6,027.76 | $269,952.36 | -$963.37 | $4,000.63 | $0.00 |
| 11/01/14 | $1,250.44 | | PAYMENT DUE | $14,032.44 | | | | | | $269,952.86 | -$963.37 | $4,000.63 | $0.00 |
| 11/05/14 | | | $500.00 BK FEES | $14,032.44 | | | | | $500.00 | $269,952.86 | -$963.37 | $4,500.63 | $0.00 |
| 11/28/14 | | | $15.00 PROPERTY INSPECTION | $14,032.44 | | | | | $15.00 | $269,952.86 | -$963.37 | $4,515.63 | $0.00 |
| 12/01/14 | $1,250.44 | | PAYMENT DUE | $15,282.88 | | | | | | $269,952.86 | -$963.37 | $4,515.63 | $0.00 |
| 01/01/15 | $1,250.44 | | PAYMENT DUE | $16,533.32 | | | | | | $269,952.86 | -$963.37 | $4,515.63 | $0.00 |
| 01/22/15 | | | $318.75 FC FEES | $16,533.32 | | | | | $318.75 | $269,952.86 | -$963.37 | $4,834.38 | $0.00 |
| 02/01/15 | $1,290.44 | | PAYMENT DUE | $17,783.76 | | | | | | $269,952.86 | -$963.37 | $4,834.38 | $0.00 |
| 02/02/15 | | | $1,667.00 HAZARD INS DISB | $17,783.76 | | | | -$1,667.00 | | $269,952.86 | -$2,630.37 | $4,834.38 | $0.00 |
| 02/03/15 | | | $15.00 PROPERTY INSPECTION | $17,783.76 | | | | | $15.00 | $269,952.86 | -$2,630.37 | $4,849.38 | $0.00 |
| 02/04/15 | | | $726.18 COUNTY TAX DISB | $17,783.76 | | | | -$726.18 | | $269,952.86 | -$3,356.55 | $4,849.38 | $0.00 |
| 02/11/15 | | | $250.00 BK FEES | $17,783.76 | | | | | $250.00 | $269,952.86 | -$3,356.55 | $5,099.38 | $0.00 |
| 02/28/15 | | | $300.00 BK FEES | $17,783.76 | | | | | $300.00 | $269,952.86 | -$3,356.55 | $5,399.38 | $0.00 |
| 03/01/15 | $1,250.44 | | PAYMENT DUE | $19,034.20 | | | | | | $269,952.86 | -$3,356.55 | $5,399.38 | $0.00 |
| 03/23/15 | | | -$69.00 PROPERTY INSPECTION | $19,034.20 | | | | | -$89.00 | $269,952.86 | -$3,356.55 | $5,330.38 | $0.00 |
| 04/01/15 | $1,250.44 | | PAYMENT DUE | $20,284.64 | | | | | | $269,952.86 | -$3,356.55 | $5,330.38 | $0.00 |
| 04/27/15 | | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $19,025.72 | $301.29 | $703.00 | $254.63 | | $269,651.57 | -$3,101.92 | $5,330.38 | $0.00 |
| 04/29/15 | | | PAYMENT REVERS. | 9/1/2013 | $19,025.72 | -$301.29 | -$703.00 | -$254.63 | | $269,952.86 | -$3,356.55 | $5,330.38 | $0.00 |
| 05/01/15 | $1,250.44 | | PAYMENT DUE | $20,276.16 | | | | | | $269,952.86 | -$3,356.55 | $5,330.38 | $0.00 |
| 05/19/15 | | | $726.18 COUNTY TAX DISB | $20,276.16 | | | | -$726.18 | | $269,952.86 | -$4,082.73 | $5,330.38 | $0.00 |
| 05/26/15 | | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $19,017.24 | $301.29 | $703.00 | $254.63 | | $269,651.57 | -$3,828.10 | $5,330.38 | $0.00 |
| 05/29/15 | | $1,241.08 | PAYMENT RECEIVE | 10/1/2013 | $17,776.16 | $302.07 | $702.22 | $236.79 | | $269,349.50 | -$3,591.31 | $5,330.38 | $0.00 |
| 06/01/15 | $1,250.44 | | PAYMENT DUE | $19,026.60 | | | | | | $269,349.50 | -$3,591.31 | $5,330.38 | $0.00 |
| 06/01/15 | | | $200.00 BK FEES | $19,026.60 | | | | | $200.00 | $269,349.50 | -$3,591.31 | $5,530.38 | $0.00 |
| 06/03/15 | | | $15.00 PROPERTY INSPECTION | $19,026.60 | | | | | $15.00 | $269,349.50 | -$3,591.31 | $5,545.38 | $0.00 |
| 06/16/15 | | | $412.50 FC FEES | $19,026.60 | | | | | $412.50 | $269,349.50 | -$3,591.31 | $5,957.88 | $0.00 |

Case 17-13167-MER Claim 6 Filed 08/21/17 Desc Main Document Page 6 of 53

| Date | Charge | Description | Date2 | Amt1 | Amt2 | Amt3 | Amt4 | Mid | Balance | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/16/15 | | $17.00 FC COSTS | | $19,026.60 | | | | $12.00 | $269,349.50 | -$3,591.31 | $5,969.88 | $0.00 |
| 06/22/15 | | PAYMENT REVERS, | 10/1/2013 | $19,026.60 | -$302.07 | -$702.22 | -$236.79 | | $269,651.57 | -$3,878.10 | $5,969.88 | $0.00 |
| 06/22/15 | | PAYMENT REVERS, | 9/1/2013 | $19,026.60 | -$301.29 | -$703.00 | -$254.63 | | $269,952.86 | -$4,082.73 | $5,969.88 | $0.00 |
| 06/24/15 | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $17,767.68 | $301.29 | $703.00 | $254.63 | | $269,651.57 | -$3,828.10 | $5,969.88 | $0.00 |
| 06/24/15 | $1,258.92 | PAYMENT | 10/1/2013 | $16,508.76 | $302.07 | $702.22 | $236.79 | | $269,349.50 | -$3,591.31 | $5,969.88 | $0.00 |
| 06/24/15 | | PAYMENT REVERS, | 10/1/2013 | $16,508.76 | -$302.07 | -$702.22 | -$236.79 | | $269,651.57 | -$3,828.10 | $5,969.88 | $0.00 |
| 06/24/15 | | PAYMENT REVERS, | 9/1/2013 | $16,508.76 | -$301.29 | -$703.00 | -$254.63 | | $269,952.86 | -$4,082.73 | $5,969.88 | $0.00 |
| 07/01/15 | $1,250.44 | PAYMENT DUE | | $17,759.20 | | | | | $269,952.86 | -$4,082.73 | $5,969.88 | $0.00 |
| 07/07/15 | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $16,500.28 | $301.29 | $703.00 | $254.63 | | $269,651.57 | -$3,828.10 | $5,969.88 | $0.00 |
| 07/07/15 | $1,258.92 | PAYMENT RECEIVE | 10/1/2013 | $15,241.36 | $302.07 | $702.22 | $236.79 | | $269,349.50 | -$3,591.31 | $5,969.88 | $0.00 |
| 07/07/15 | $1,252.12 | PAYMENT RECEIVE | 11/1/2013 | $13,982.24 | $302.86 | $701.43 | $247.83 | | $269,046.64 | -$3,343.48 | $5,359.88 | $0.00 |
| 07/14/15 | | REVERSAL PAYMEN | 11/1/2013 | $13,982.24 | -$302.86 | -$701.43 | -$247.83 | | $269,349.50 | -$3,591.31 | $5,969.88 | $0.00 |
| 07/14/15 | | REVERSAL PAYMEN | 10/1/2013 | $13,982.24 | -$302.07 | -$702.22 | -$236.79 | | $269,651.57 | -$3,828.10 | $5,969.88 | $0.00 |
| 07/14/15 | | REVERSAL PAYMEN | 9/1/2013 | $13,982.24 | -$301.29 | -$703.00 | -$254.63 | | $269,952.86 | -$4,082.73 | $5,969.88 | $0.00 |
| 07/20/15 | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $12,730.32 | $301.29 | $703.00 | $254.63 | | $269,651.57 | -$3,828.10 | $5,969.88 | $0.00 |
| 07/20/15 | $1,258.92 | PAYMENT RECEIVE | 10/1/2013 | $11,471.40 | $302.07 | $702.22 | $236.79 | | $269,349.50 | -$3,591.31 | $5,969.88 | $0.00 |
| 07/20/15 | $1,258.92 | PAYMENT RECEIVE | 11/1/2013 | $10,212.48 | $302.86 | $701.43 | $247.83 | | $269,046.64 | -$3,343.48 | $5,969.88 | $0.00 |
| 07/22/15 | | $536.30 FC COSTS | | $10,212.48 | | | | $535.30 | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 08/01/15 | $1,250.44 | PAYMENT DUE | | $11,462.92 | | | | | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 08/17/15 | | REVERSAL PAYMEN | 11/1/2013 | $11,462.92 | -$302.86 | -$701.43 | -$247.83 | | $269,349.50 | -$3,591.31 | $6,506.18 | $0.00 |
| 08/17/15 | | REVERSAL PAYMEN | 10/1/2013 | $11,462.92 | -$302.07 | -$702.22 | -$236.79 | | $269,651.57 | -$3,828.10 | $6,506.18 | $0.00 |
| 08/17/15 | | REVERSAL PAYMEN | 9/1/2013 | $11,462.92 | -$301.29 | -$703.00 | -$254.63 | | $269,952.86 | -$4,082.73 | $6,506.18 | $0.00 |
| 08/17/15 | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $10,204.00 | $301.29 | $703.00 | $254.63 | | $269,651.57 | -$3,828.10 | $6,506.18 | $0.00 |
| 08/17/15 | $1,258.92 | PAYMENT RECEIVE | 10/1/2013 | $8,945.08 | $302.07 | $702.22 | $236.79 | | $269,349.50 | -$3,591.31 | $6,506.18 | $0.00 |
| 08/17/15 | $1,258.92 | PAYMENT RECEIVE | 11/1/2013 | $7,686.16 | $302.86 | $701.43 | $247.83 | | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 08/17/15 | | REVERSAL PAYMEN | 11/1/2013 | $7,686.16 | -$302.86 | -$701.43 | -$247.83 | | $269,349.50 | -$3,591.31 | $6,506.18 | $0.00 |
| 08/17/15 | $1,258.92 | PAYMENT RECEIVE | 11/1/2013 | $6,427.24 | $302.86 | $701.43 | $247.83 | | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 08/18/15 | | REVERSAL PAYMEN | 11/1/2013 | $6,427.24 | -$302.86 | -$701.43 | -$247.83 | | $269,349.50 | -$3,591.31 | $6,506.18 | $0.00 |
| 08/18/15 | | REVERSAL PAYMEN | 10/1/2013 | $6,427.24 | -$302.07 | -$702.22 | -$236.79 | | $269,651.57 | -$3,828.10 | $6,506.18 | $0.00 |
| 08/18/15 | | REVERSAL PAYMEN | 9/1/2013 | $6,427.24 | -$301.29 | -$703.00 | -$254.63 | | $269,952.86 | -$4,082.73 | $6,506.18 | $0.00 |
| 08/18/15 | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $5,168.32 | $301.29 | $703.00 | $254.63 | | $269,651.57 | -$3,828.10 | $8,506.18 | $0.00 |
| 08/18/15 | $1,258.92 | PAYMENT RECEIVE | 10/1/2013 | $3,909.40 | $302.07 | $702.22 | $236.79 | | $269,349.50 | -$3,591.31 | $8,506.18 | $0.00 |
| 08/18/15 | $1,258.52 | PAYMENT RECEIVE | 11/1/2013 | $2,650.48 | $302.86 | $701.43 | $247.83 | | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 09/01/15 | $1,258.92 | PAYMENT RECEIVE | 12/1/2013 | $1,391.56 | $303.65 | $700.64 | $254.63 | | $268,742.99 | -$3,088.85 | $6,506.18 | $0.00 |
| 09/01/15 | $1,250.44 | PAYMENT DUE | | $2,642.00 | | | | | $268,742.99 | -$3,088.85 | $6,506.18 | $0.00 |
| 09/14/15 | | -$28.00 FC FEES | | $2,642.00 | | | | -$28.00 | $268,742.99 | -$3,088.85 | $6,472.18 | $0.00 |
| 10/01/15 | $1,250.44 | PAYMENT DUE | | $3,892.44 | | | | | $268,742.99 | -$3,088.85 | $6,478.18 | $0.00 |
| 10/21/15 | $1,258.92 | PAYMENT RECEIVE | 1/1/2014 | $2,633.52 | $304.41 | $699.85 | $254.63 | | $268,438.55 | -$2,834.22 | $6,478.18 | $0.00 |
| 11/01/15 | $1,250.44 | PAYMENT DUE | | $3,883.96 | | | | | $268,438.55 | -$2,834.22 | $6,478.18 | $0.00 |
| 11/03/15 | $1,258.92 | PAYMENT RECEIVE | 2/1/2014 | $2,625.04 | $305.23 | $699.06 | $254.63 | | $268,133.32 | -$2,579.59 | $6,478.18 | $0.00 |
| 12/01/15 | $1,250.44 | PAYMENT DUE | | $3,875.48 | | | | | $268,133.32 | -$2,579.59 | $6,478.18 | $0.00 |
| 12/30/15 | $1,258.92 | PAYMENT RECEIVE | 3/1/2014 | $2,616.56 | $306.03 | $698.26 | $754.63 | | $267,827.29 | -$2,324.96 | $6,478.18 | $0.00 |
| 01/01/16 | $1,250.44 | PAYMENT DUE | | $3,867.00 | | | | | $267,827.29 | -$2,324.96 | $6,478.18 | $0.00 |
| 02/01/16 | $1,250.44 | PAYMENT DUE | | $5,117.44 | | | | | $267,827.29 | -$2,324.96 | $6,478.18 | $0.00 |
| 02/02/16 | | $1,669.00 HAZARD INS DISB | | $5,117.44 | | | | -$1,669.00 | $267,827.29 | -$3,993.96 | $6,478.18 | $0.00 |
| 02/04/16 | | $726.06 COUNTY TAX DISB | | $5,117.44 | | | | -$726.06 | $267,827.29 | -$4,720.02 | $6,478.18 | $0.00 |
| 02/26/16 | $1,258.92 | PAYMENT RECEIVE | 4/1/2014 | $3,858.52 | $306.82 | $697.47 | $254.63 | | $267,520.47 | -$4,465.39 | $6,478.18 | $0.00 |
| 03/01/16 | $1,250.44 | PAYMENT DUE | | $5,108.96 | | | | | $267,520.47 | -$4,465.39 | $6,478.18 | $0.00 |
| 04/01/16 | $1,258.92 | PAYMENT RECEIVE | 5/1/2014 | $3,860.04 | $307.62 | $696.67 | $254.63 | | $267,212.85 | -$4,210.76 | $6,478.18 | $0.00 |
| 04/01/16 | $1,250.44 | PAYMENT RECEIVE | 6/1/2014 | $2,599.60 | $308.42 | $695.87 | $246.15 | | $266,904.43 | -$3,964.61 | $6,478.18 | $0.00 |
| 04/01/16 | $1,250.44 | PAYMENT DUE | | $3,850.04 | | | | | $266,904.43 | -$3,964.61 | $6,478.18 | $0.00 |
| 04/25/16 | $1,250.44 | PAYMENT RECEIVE | 7/1/2014 | $2,599.60 | $309.23 | $695.06 | $246.15 | | $266,595.20 | -$3,718.46 | $6,478.18 | $0.00 |
| 04/25/16 | $1,250.44 | PAYMENT RECEIVE | 8/1/2014 | $1,349.16 | $310.03 | $694.26 | $246.15 | | $266,285.17 | -$3,472.31 | $6,478.18 | $0.00 |

| Date | Amt1 | Amt2 | Description | Date2 | Amt3 | Amt4 | Amt5 | Amt6 | Amt7 | Bal1 | Bal2 | Bal3 | Bal4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/16 | $1,250.44 | | PAYMENT DUE | | | $2,599.60 | | | | $266,285.17 | -$3,472.31 | $6,478.18 | $0.00 |
| 05/10/16 | | | $850.00 BK FEES | | | $2,599.60 | | | $850.00 | $266,285.17 | -$3,472.31 | $7,328.18 | $0.00 |
| 05/13/16 | | | $726.06 COUNTY TAX DISB | | | $2,599.60 | | -$726.06 | | $266,285.17 | -$4,198.37 | $7,328.18 | $0.00 |
| 05/17/16 | | $1,250.44 | PAYMENT RECEIVE | 9/1/2016 | $1,349.16 | $310.84 | $693.45 | $246.15 | | $265,974.33 | -$3,952.22 | $7,328.18 | $0.00 |
| 06/01/16 | $1,250.44 | | PAYMENT DUE | | | $2,599.60 | | | | $265,974.33 | -$3,952.22 | $7,328.18 | $0.00 |
| 07/01/16 | $1,250.44 | | PAYMENT DUE | | | $3,850.04 | | | | $265,974.33 | -$3,952.22 | $7,328.18 | $0.00 |
| 08/01/16 | $1,250.44 | | PAYMENT DUE | | | $5,100.48 | | | | $265,974.33 | -$3,952.22 | $7,328.18 | $0.00 |
| 08/08/16 | | $1,250.44 | PAYMENT RECEIVE | 10/1/2016 | $3,850.04 | $311.65 | $692.64 | $246.15 | | $265,662.68 | -$3,706.07 | $7,328.18 | $0.00 |
| 09/01/16 | $1,264.38 | | PAYMENT DUE | | | $5,114.42 | | | | $265,662.68 | -$3,706.07 | $7,328.18 | $0.00 |
| 09/26/16 | | | $942.79 FC COSTS | | | $5,114.42 | | | $942.79 | $265,662.68 | -$3,706.07 | $8,270.97 | $0.00 |
| 10/01/16 | $1,264.38 | | PAYMENT DUE | | | $6,378.80 | | | | $265,662.68 | -$3,706.07 | $8,270.97 | $0.00 |
| 10/11/16 | | | REVERSAL PAYMER | 10/1/2016 | $6,378.80 | -$311.65 | -$692.64 | -$246.15 | | $265,974.33 | -$3,952.22 | $8,270.97 | $0.00 |
| 10/11/16 | | $1,250.44 | PAYMENT RECEIVE | 10/1/2016 | $5,128.36 | $311.65 | $692.64 | $246.15 | | $265,662.68 | -$3,706.07 | $8,270.97 | $0.00 |
| 11/01/16 | $1,264.38 | | PAYMENT DUE | | | $6,392.74 | | | | $265,662.68 | -$3,706.07 | $8,270.97 | $0.00 |
| 12/01/16 | $1,264.38 | | PAYMENT DUE | | | $7,657.12 | | | | $265,662.68 | -$3,706.07 | $8,270.97 | $0.00 |
| 12/19/16 | | | $650.00 BK FEES | | | $7,657.12 | | | $650.00 | $265,662.68 | -$3,706.07 | $8,920.97 | $0.00 |
| 01/01/17 | $1,264.38 | | PAYMENT DUE | | | $8,921.50 | | | | $265,662.68 | -$3,706.07 | $8,920.97 | $0.00 |
| 01/13/17 | | | $1,645.00 HAZARD INS DISB | | | $8,921.50 | | -$1,645.00 | | $265,662.68 | -$5,351.07 | $8,920.97 | $0.00 |
| 02/01/17 | $1,264.38 | | PAYMENT DUE | | | $10,185.88 | | | | $265,662.68 | -$5,351.07 | $8,920.97 | $0.00 |
| 02/06/17 | | | $740.92 COUNTY TAX DISB | | | $10,185.88 | | -$740.92 | | $265,662.68 | -$6,091.99 | $8,920.97 | $0.00 |
| 02/23/17 | | | PARTIAL PAYMENT | | | $10,185.88 | | | $45.45 | $265,662.68 | -$6,091.99 | $8,920.97 | $45.45 |
| 03/01/17 | $1,264.38 | | PAYMENT DUE | | | $11,450.26 | | | | $265,662.68 | -$6,091.99 | $8,920.97 | $45.45 |
| 04/01/17 | $1,264.38 | | PAYMENT DUE | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,920.97 | $45.45 |
| 04/07/17 | | | $15.00 FC COSTS | | | $12,714.64 | | | $15.00 | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| 04/10/17 | | | BANKRUPTCY FILED | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |
| | | | | | | $12,714.64 | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $45.45 |

(Page 2 of 58)

Cop

# FIXED/ADJUSTABLE RATE NOTE

(LIBOR One-Year Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

February 27, 2004     Steamboat Springs              , CO
      *[Date]*                  *[City]*                    *[State]*

50655 Semotan Drive, Steamboat Springs, CO 80487
*[Property Address]*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 333,000.00                    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     4.750     %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on April 1 2004 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     March 1 2034     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50704-0780, ATTN: Payment Processing                      or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,737.09                    . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of March,     2009 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

LOAN NO:
MULTISTATE FIXED/ADJUSTABLE RATE NOTE -
WSJ One-Year LIBOR Single Family - Fannie Mae
Uniform Instrument  Form 3528  1/01
(Page 1 of 4)          Initials:
GMACM-CRM.1379 (0204)

Cop

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding

Two and 375/1000 percentage points ( 2.375 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 6.750 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.750 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. and the amount of my monthly payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Case:17-13167-MER Doc#:146 Filed:08/24/18 Entered:08/27/18 14:35:03 Page24 of 48
Case 17-13167-MER Claim 6 Filed 08/21/17 Desc Main Document Page 10 of 53

(Page 4 of 50)

Cop

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)     Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)     When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

(Page 5 of 58)

Cop

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Jill M. Clow                    -Borrower

_____ (Seal)
Timothy A. Reed                 -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

PAY TO THE ORDER OF

Limited Signing Officer

[Sign Original Only]

LOAN NO:
MULTISTATE ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family – Fannie Mae Uniform Instrument Form 3528  6/01
G2IACM-CN04-1379 (0224)                    (Page 4 of 4)

EXHIBIT

B

Fill in this information to identify the case:

Debtor 1    Jill Clow

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: District of Colorado

Case number   17-13167

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | MTGLQ Investors LP <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor   Selene Finance, LP |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? |

| | | |
|---|---|---|
| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? <br><br> Selene Finance, LP <br> Name <br><br> 9990 Richmond Avenue, Suite 400 South <br> Number   Street <br><br> Houston    TX    77042 <br> City     State    ZIP Code <br><br> Contact phone 877-768-3759 <br><br> Contact email | Where should payments to the creditor be sent? (if different) <br><br> Selene Finance, LP <br> Name <br><br> 9990 Richmond Avenue, Suite 400 South <br> Number   Street <br><br> Houston    TX    77042 <br> City     State    ZIP Code <br><br> Contact phone 877-768-3759 <br><br> Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) 6-1       Filed on 08/21/2017 <br>                                                          MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes. Who made the earlier filing? |

**Part 2:**  **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __2__  __0__  __3__  __4__ |

| | |
|---|---|
| 7. How much is the claim? | $_____ 301,886.99 . Does this amount include interest or other charges?<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c)<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Money Loaned |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br><br>Nature of property:<br>☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe:  50655 SEMOTAN DR STEAMBOAT SPRINGS CO 80487<br><br>Basis for perfection:  RECORDED DEED OF TRUST<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:  $_____<br>Amount of the claim that is secured:  $____ 301,886.99<br>Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:  $____ 47,751.88<br><br>Annual Interest Rate (when case was filed) 3.125 %<br>☑ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property. _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ❑ Yes. Check one: | |
| | ❑ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ❑ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ❑ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4) | $_____ |
| | ❑ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ❑ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ❑ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

❑ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

❑ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004

❑ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date ___11 - 30 - 2017___
        MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | PHILIP STUART TRAYNOR | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | ATTORNEY | | |
| Company | MARINOSCI LAW GROUP P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 14643 DALLAS PARKWAY STE 750 | | |
| | Number    Street | | |
| | DALLAS TX 75254 | | |
| | City | State | ZIP Code |
| Contact phone | 972-331-2300 | Email ecf@mlg-defaultlaw.com | |

Case 17-13167-MER Claim 5 Filed 12/01/17 Desc Main Document Page 4 of 55

## Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|
| Cause No: 17-13167 | Principal Balance: | $265,662.68 | Principal & interest due: | $31,132.99 | Principal & interest | $1,006.29 |
| Debtor 1: Jill Clow | Interest Due: | $21,255.60 | Prepetition fees due: | $8,935.97 | Monthly escrow | $260.09 |
| Debtor 2 _____ | Fees, costs due: | $8,935.97 | Escrow deficiency for funds advanced: | $6,091.99 | Private Mortgage Insurance: | $0.00 |
| Last four digits to identify: 2034 | Escrow deficiency for funds advanced: | $6,091.99 | Projected Escrow Shortage: | $1,650.18 | Total monthly payment: | $1,254.38 |
| Creditor: M1GLQ Investors, L.P. | Less total funds on hand: - | $59.25 | Less funds on hand: - | $59.25 | | |
| Servicer: Selene Finance LP | Total debt. | $301,886.99 | Total Prepetition Arrearage: | $47,751.88 | | |

Fix Accrual/Daily Simple Interest/other 3.125 FIXED

### Part 5: Payment Loan History form First Date of Default

| | | Account History | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due to balance | H. Amount Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance (Beginning Balances) | P. Fees/Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | $271,744.23 | $3,229.78 | $0.00 | $0.00 | |
| 03/01/13 | $1,255.67 | | | PAYMENT DUE | | $1,255.67 | | | | | | $271,744.23 | $3,229.78 | $0.00 | $0.00 | |
| 03/27/13 | | | | PAYMENT RECEIVE | 3/1/2013 | $1,255.67 | $296.62 | $707.67 | $274.54 | | | $271,447.61 | $3,504.32 | $0.00 | $0.00 | |
| 03/29/13 | | $1,278.80 | | PAYMENT RECEIVE | 4/1/2013 | -$23.16 | $197.40 | $706.89 | $274.54 | | | $271,150.21 | $3,778.86 | $0.00 | $0.00 | |
| 03/29/13 | | | | $9.15 PROPERTY INSPECTION | | -$23.16 | | | | | $9.15 | $271,150.21 | $3,778.86 | $9.15 | $0.00 | |
| 04/01/13 | $1,258.92 | | | PAYMENT DUE | | $1,235.76 | | | | | | $271,150.21 | $3,778.86 | $9.15 | $0.00 | |
| 05/01/13 | $1,258.92 | | | PAYMENT DUE | | $2,494.68 | | | | | | $271,150.21 | $3,778.86 | $9.15 | $0.00 | |
| 05/17/13 | | | | $53.89 COUNTY TAX DISB | | $2,494.68 | | | | -$53.89 | | $271,150.21 | $3,724.97 | $9.15 | $0.00 | |
| 05/17/13 | | | | $817.78 COUNTY TAX DISB | | $2,494.58 | | | | -$817.78 | | $271,150.21 | $2,907.19 | $9.15 | $0.00 | |
| 06/01/13 | $1,258.92 | | | PAYMENT DUE | | $3,753.60 | | | | | | $271,150.21 | $2,907.19 | $9.15 | $0.00 | |
| 06/17/13 | | | | $9.15 PROPERTY INSPECTION | | $3,753.60 | | | | | $9.15 | $271,150.21 | $2,907.19 | $18.30 | $0.00 | |
| 07/01/13 | $1,258.92 | | | PAYMENT DUE | | $5,012.52 | | | | | | $271,150.21 | $2,907.19 | $18.30 | $0.00 | |
| 07/05/13 | | $1,258.92 | | PAYMENT RECEIVE | 5/1/2013 | $3,753.63 | $298.17 | $706.12 | $254.63 | | | $270,852.04 | $3,161.82 | $18.30 | $0.00 | |
| 07/05/13 | | $1,258.92 | | PAYMENT RECEIVE | 6/1/2013 | $2,494.68 | $298.95 | $705.34 | $254.63 | | | $270,553.09 | $3,416.45 | $18.30 | $0.00 | |
| 07/05/13 | | | | REFUND ESCROW | | $2,494.68 | | | | $53.89 | | $270,553.09 | $3,470.34 | $18.30 | $0.00 | |
| 08/01/13 | $1,258.92 | | | PAYMENT DUE | | $3,753.60 | | | | | | $270,553.09 | $3,470.34 | $18.30 | $0.00 | |
| 09/01/13 | $1,258.92 | | | PAYMENT DUE | | $5,012.52 | | | | | | $270,553.09 | $3,470.34 | $18.30 | $0.00 | |
| 10/01/13 | $1,258.92 | | | PAYMENT DUE | | $6,271.44 | | | | | | $270,553.09 | $3,470.34 | $18.30 | $0.00 | |
| 10/09/13 | | | | $918.75 FC FEES | | $6,271.44 | | | | | $918.75 | $270,553.09 | $3,470.34 | $937.05 | $0.00 | |
| 10/09/13 | | | | $310.00 FC COSTS | | $6,271.44 | | | | | $310.00 | $270,553.09 | $3,470.34 | $1,247.05 | $0.00 | |
| 10/09/13 | | | | $230.00 FC COSTS | | $6,271.44 | | | | | $230.00 | $270,553.09 | $3,470.34 | $1,477.05 | $0.00 | |
| 11/01/13 | $1,258.92 | | | PAYMENT DUE | | $7,530.36 | | | | | | $270,553.09 | $3,470.34 | $1,477.05 | $0.00 | |
| 11/25/13 | | | | $15.00 PROPERTY INSPECTION | | $7,530.36 | | | | | $15.09 | $270,553.09 | $3,470.34 | $1,492.05 | $0.00 | |
| 11/27/13 | | | | $9.20 FC COSTS | | $7,530.36 | | | | | $9.20 | $270,553.09 | $3,470.34 | $1,501.25 | $0.00 | |
| 11/27/13 | | | | $120.00 FC COSTS | | $7,530.36 | | | | | $120.00 | $270,553.09 | $3,470.34 | $1,621.25 | $0.00 | |
| 11/27/13 | | | | $400.00 FC COSTS | | $7,530.36 | | | | | $400.00 | $270,553.09 | $3,470.34 | $2,021.25 | $0.00 | |
| 12/01/13 | $1,258.92 | | | PAYMENT DUE | | $8,789.28 | | | | | | $270,553.09 | $3,470.34 | $2,021.25 | $0.00 | |

| Date | | | Description | Date | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/26/13 | | | $12.00 PROPERTY INSPECTION | | $8,789.28 | | | | $12.00 | $270,553.09 | $3,470.34 | $2,033.25 | $0.00 |
| 12/27/13 | $923.09 | | PARTIAL PAYMENT | | $7,865.79 | | | | | $923.49 $270,553.09 | $3,470.34 | $2,033.25 | $923.49 |
| 01/01/14 | $1,258.97 | | PAYMENT DUE | | $9,124.71 | | | | | $270,553.09 | $3,470.34 | $2,033.25 | $923.49 |
| 01/22/14 | | $335.43 | PAYMENT RECEIVE | 7/1/2013 | $8,789.28 | $299.72 | $700.57 | $254.63 | | -$923.49 $270,253.37 | $3,724.97 | $2,033.25 | $0.00 |
| 01/28/14 | | $1,258.92 | PAYMENT RECEIVE | 8/1/2013 | $7,530.36 | $300.51 | $703.78 | $254.63 | | $269,952.86 | $3,979.60 | $2,033.25 | $0.00 |
| 02/01/14 | $1,258.92 | | PAYMENT DUE | | $8,789.28 | | | | | $269,952.86 | $3,979.60 | $2,033.25 | $0.00 |
| 02/03/14 | | $714.40 | COUNTY TAX DISB | | $8,789.28 | | | -$714.40 | | $269,952.86 | $3,265.20 | $2,033.25 | $0.00 |
| 02/13/14 | | $1,525.00 | HAZARD INS DISB | | $8,789.28 | | | -$1,525.00 | | $269,952.86 | $1,740.20 | $2,033.25 | $0.00 |
| 02/13/14 | | $1,274.77 | HAZARD INS DISB | | $8,789.28 | | | -$1,274.77 | | $269,952.86 | $465.43 | $2,033.25 | $0.00 |
| 03/01/14 | $1,258.92 | | PAYMENT DUE | | $10,048.20 | | | | | $269,952.86 | $465.43 | $2,033.25 | $0.00 |
| 04/01/14 | $1,258.97 | | PAYMENT DUE | | $11,307.12 | | | | | $269,952.86 | $465.43 | $2,033.25 | $0.00 |
| 04/23/14 | | -$15.75 FC FEES | | | $11,307.12 | | | | -$15.75 | $269,952.86 | $465.43 | $2,017.50 | $0.00 |
| 05/01/14 | $1,250.44 | | PAYMENT DUE | | $12,557.56 | | | | | $269,952.86 | $465.43 | $2,017.50 | $0.00 |
| 05/16/14 | | $714.40 | COUNTY TAX DISB | | $12,557.56 | | | -$714.40 | | $269,952.85 | -$248.97 | $2,017.50 | $0.00 |
| 05/16/14 | | $714.40 | COUNTY TAX DISB | | $12,557.56 | | | -$714.40 | | $269,952.86 | -$963.37 | $2,017.50 | $0.00 |
| 06/01/14 | $1,250.44 | | PAYMENT DUE | | $13,808.00 | | | | | $269,952.86 | -$963.37 | $2,017.50 | $0.00 |
| 06/16/14 | | $300.00 BK FEES | | | $13,808.00 | | | | $300.00 | $269,952.86 | -$963.37 | $2,317.50 | $0.00 |
| 06/25/14 | | $6.00 FC COSTS | | | $13,808.00 | | | | $6.00 | $269,952.86 | -$963.37 | $2,323.50 | $0.00 |
| 06/25/14 | | $1,012.13 FC COSTS | | | $13,808.00 | | | | $1,011.13 | $269,952.86 | -$963.37 | $3,335.63 | $0.00 |
| 07/01/14 | $1,250.44 | | PAYMENT DUE | | $15,058.44 | | | | | $269,952.86 | -$963.37 | $3,335.63 | $0.00 |
| 07/14/14 | | $300.00 BK FEES | | | $15,058.44 | | | | $300.00 | $269,952.86 | -$963.37 | $3,635.63 | $0.00 |
| 07/24/14 | | $15.00 PROPERTY INSPECTION | | | $15,058.44 | | | | $15.00 | $269,952.86 | -$963.37 | $3,650.63 | $0.00 |
| 08/01/14 | $1,250.44 | | PAYMENT DUE | | $16,308.88 | | | | | $269,952.86 | -$963.37 | $3,650.63 | $0.00 |
| 08/19/14 | | $350.00 BK FEES | | | $16,308.88 | | | | $350.00 | $269,952.86 | -$963.37 | $4,000.63 | $0.00 |
| 09/01/14 | $1,250.44 | | PAYMENT DUE | | $17,559.32 | | | | | $269,952.86 | -$963.37 | $4,000.63 | $0.00 |
| 10/01/14 | $1,250.44 | | PAYMENT DUE | | $18,809.76 | | | | | $269,952.86 | -$963.37 | $4,000.63 | $0.00 |
| 10/14/14 | | $6,027.76 | PARTIAL PAYMENT | | $12,782.00 | | | | $6,027.76 | $268,952.95 | -$963.37 | $4,000.63 | $6,027.76 |
| 10/30/14 | | -$6,027.76 | REVERSAL PAYMENT | | $18,809.76 | | | | -$6,027.76 | $269,952.86 | -$963.37 | $4,000.63 | $0.00 |
| 11/01/14 | $1,250.44 | | PAYMENT DUE | | $20,060.20 | | | | | $269,952.86 | -$963.37 | $4,000.63 | $0.00 |
| 11/05/14 | | $500.00 BK FEES | | | $20,060.20 | | | | $500.00 | $269,952.86 | -$963.37 | $4,500.63 | $0.00 |
| 11/28/14 | | $15.00 PROPERTY INSPECTION | | | $20,060.70 | | | | $15.00 | $269,952.86 | -$963.37 | $4,515.63 | $0.00 |
| 12/01/14 | $1,250.44 | | PAYMENT DUE | | $21,310.64 | | | | | $269,952.86 | -$963.37 | $4,515.63 | $0.00 |
| 01/01/15 | $1,250.44 | | PAYMENT DUE | | $22,561.08 | | | | | $269,952.86 | -$963.37 | $4,515.63 | $0.00 |
| 01/22/15 | | $318.75 FC FEES | | | $22,561.08 | | | | $318.75 | $269,952.86 | -$963.37 | $4,834.38 | $0.00 |
| 01/01/15 | $1,250.44 | | PAYMENT DUE | | $23,811.52 | | | | | $269,952.86 | -$963.37 | $4,834.38 | $0.00 |
| 02/02/15 | | $1,667.00 HAZARD INS DISB | | | $23,811.52 | | | -$1,667.00 | | $269,952.86 | -$2,630.37 | $4,834.38 | $0.00 |
| 02/03/15 | | $15.00 PROPERTY INSPECTION | | | $23,811.52 | | | | $15.00 | $269,952.86 | -$2,630.37 | $4,849.38 | $0.00 |
| 02/04/15 | | $726.18 COUNTY TAX DISB | | | $23,811.52 | | | -$726.18 | | $269,952.86 | -$3,356.55 | $4,849.38 | $0.00 |
| 02/11/15 | | $250.00 BK FEES | | | $23,811.52 | | | | $250.00 | $269,952.86 | -$3,356.55 | $5,099.38 | $0.00 |
| 02/26/15 | | $300.00 BK FEES | | | $23,811.52 | | | | $300.00 | $269,952.86 | -$3,356.55 | $5,399.38 | $0.00 |
| 03/01/15 | $1,250.44 | | PAYMENT DUE | | $25,061.96 | | | | | $269,952.86 | -$3,356.55 | $5,399.38 | $0.00 |
| 03/23/15 | | -$69.00 PROPERTY INSPECTION | | | $25,061.96 | | | | -$69.00 | $269,952.86 | -$3,356.55 | $5,330.38 | $0.00 |
| 04/01/15 | $1,250.44 | | PAYMENT DUE | | $26,312.40 | | | | | $269,952.86 | -$3,356.55 | $5,330.38 | $0.00 |
| 04/27/15 | | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $25,053.48 | $301.29 | $703.00 | $254.63 | | $269,651.57 | -$3,101.92 | $5,330.38 | $0.00 |
| 04/29/15 | | $1,258.92 | PAYMENT REVERSAL | 9/1/2013 | $25,053.48 | -$301.29 | -$703.00 | -$254.63 | | $269,952.86 | -$3,356.55 | $5,330.38 | $0.00 |
| 05/01/15 | $1,250.44 | | PAYMENT DUE | | $26,303.92 | | | | | $269,952.86 | -$3,356.55 | $5,330.38 | $0.00 |
| 05/19/15 | | $726.18 COUNTY TAX DISB | | | $26,303.92 | | | -$726.18 | | $269,952.86 | -$4,082.73 | $5,330.38 | $0.00 |
| 05/26/15 | | $1,758.92 | PAYMENT RECEIVE | 9/1/2013 | $25,045.00 | $301.29 | $703.00 | $254.63 | | $269,651.57 | -$3,828.10 | $5,330.38 | $0.00 |
| 05/29/15 | | $1,241.06 | PAYMENT RECEIVE | 10/1/2013 | $23,803.92 | $302.07 | $702.22 | $236.79 | | $269,349.50 | -$3,591.31 | $5,330.38 | $0.00 |
| 06/01/15 | $1,250.44 | | PAYMENT DUE | | $25,054.36 | | | | | $269,349.50 | -$3,591.31 | $5,330.38 | $0.00 |
| 06/01/15 | | $200.00 BK FEES | | | $25,054.36 | | | | $200.00 | $269,349.50 | -$3,591.31 | $5,530.38 | $0.00 |
| 06/03/15 | | $15.00 PROPERTY INSPECTION | | | $25,054.36 | | | | $15.00 | $269,349.50 | -$3,591.31 | $5,545.38 | $0.00 |
| 06/16/15 | | $412.50 FC FEES | | | $25,054.36 | | | | $412.50 | $269,349.50 | -$3,591.31 | $5,957.83 | $0.00 |

| Date | Amount | Description | Date2 | Amount | Amount | Amount | Amount | Balance | Amount | Amount | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/16/15 | | $12.00 FC COSTS | | $25,054.36 | | | $12.00 | $269,345.50 | -$3,591.31 | $5,969.88 | $0.00 |
| 06/22/15 | | PAYMENT REVERS. | 10/1/2013 | $25,054.36 | -$302.07 | -$702.22 | -$236.79 | $209,651.57 | -$3,828.10 | $5,969.88 | $0.00 |
| 06/22/15 | | PAYMENT REVERS. | 9/1/2013 | $25,054.36 | -$301.29 | -$703.00 | -$254.63 | $269,952.86 | -$4,082.73 | $5,969.88 | $0.00 |
| 06/24/15 | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $23,795.44 | $301.29 | $703.00 | $254.63 | $269,651.57 | -$3,828.10 | $5,969.88 | $0.00 |
| 06/24/15 | $1,258.92 | PAYMENT | 10/1/2013 | $22,536.52 | $302.07 | $702.22 | $236.79 | $269,345.50 | -$3,591.31 | $5,969.88 | $0.00 |
| 06/24/15 | | PAYMENT REVERS. | 10/1/2013 | $22,536.52 | -$302.07 | -$702.22 | -$236.79 | $269,651.57 | -$3,828.10 | $5,969.88 | $0.00 |
| 06/24/15 | | PAYMENT REVERS. | 9/1/2013 | $22,536.52 | -$301.29 | -$703.00 | -$254.63 | $269,952.86 | -$4,082.73 | $5,969.88 | $0.00 |
| 07/01/15 | $1,250.44 | PAYMENT DUE | | $23,786.96 | | | | $269,952.86 | -$4,082.73 | $5,969.88 | $0.00 |
| 07/07/15 | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $22,528.04 | $301.29 | $703.00 | $254.63 | $269,651.57 | -$3,828.10 | $5,969.88 | $0.00 |
| 07/07/15 | $1,258.92 | PAYMENT RECEIVE | 10/1/2013 | $21,269.12 | $302.07 | $702.22 | $236.79 | $269,349.50 | -$3,591.31 | $5,969.88 | $0.00 |
| 07/07/15 | $1,252.12 | PAYMENT RECEIVE | 11/1/2013 | $20,017.00 | $302.86 | $701.43 | $247.83 | $269,046.64 | -$3,343.48 | $5,969.88 | $0.00 |
| 07/14/15 | | REVERSAL PAYMET | 11/1/2013 | $20,017.00 | -$302.86 | -$701.43 | -$247.83 | $269,349.50 | -$3,591.31 | $5,969.88 | $0.00 |
| 07/14/15 | | REVERSAL PAYMET | 10/2/2013 | $20,017.00 | -$302.07 | -$702.22 | -$236.79 | $269,651.57 | -$3,828.10 | $5,969.88 | $0.00 |
| 07/14/15 | | REVERSAL PAYMET | 9/1/2013 | $20,017.00 | -$301.29 | -$703.00 | -$254.63 | $269,952.86 | -$4,082.73 | $5,969.88 | $0.00 |
| 07/20/15 | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $18,758.08 | $301.29 | $703.00 | $254.63 | $269,651.57 | -$3,828.10 | $5,969.88 | $0.00 |
| 07/20/15 | $1,258.92 | PAYMENT RECEIVE | 10/1/2013 | $17,499.16 | $302.07 | $702.22 | $236.79 | $269,349.50 | -$3,591.31 | $5,969.88 | $0.00 |
| 07/20/15 | $1,258.92 | PAYMENT RECEIVE | 11/1/2013 | $16,240.24 | $302.86 | $701.43 | $247.83 | $269,046.64 | -$3,343.48 | $5,969.88 | $0.00 |
| 07/22/15 | | $536.10 FC COSTS | | $16,240.24 | | | $536.10 | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 08/01/15 | $1,250.44 | PAYMENT DUE | | $17,490.68 | | | | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 08/17/15 | | REVERSAL PAYMET | 11/1/2013 | $17,490.68 | -$302.86 | -$701.43 | -$247.83 | $269,349.50 | -$3,591.31 | $6,506.18 | $0.00 |
| 08/17/15 | | REVERSAL PAYMET | 10/1/2013 | $17,490.68 | -$302.07 | -$702.22 | -$236.79 | $269,651.57 | -$3,828.10 | $6,506.18 | $0.00 |
| 08/17/15 | | REVERSAL PAYMET | 9/1/2013 | $17,490.68 | -$301.29 | -$703.00 | -$254.63 | $269,952.86 | -$4,082.73 | $6,506.18 | $0.00 |
| 08/17/15 | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $16,231.76 | $301.29 | $703.00 | $254.63 | $269,651.57 | -$3,828.10 | $6,506.18 | $0.00 |
| 08/17/15 | $1,258.92 | PAYMENT RECEIVE | 10/1/2013 | $14,972.84 | $302.07 | $702.22 | $236.79 | $269,349.50 | -$3,591.31 | $6,506.18 | $0.00 |
| 08/17/15 | $1,258.92 | PAYMENT RECEIVE | 11/1/2013 | $13,713.92 | $302.86 | $701.43 | $247.83 | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 08/17/15 | | REVERSAL PAYMET | 11/1/2013 | $13,713.92 | -$302.86 | -$701.43 | -$247.83 | $269,349.50 | -$3,591.31 | $6,506.18 | $0.00 |
| 08/17/15 | $1,258.92 | PAYMENT RECEIVE | 11/1/2013 | $12,455.00 | $302.86 | $701.43 | $247.83 | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 08/18/15 | | REVERSAL PAYMET | 11/1/2013 | $12,455.00 | -$302.86 | -$701.43 | -$247.83 | $269,349.50 | -$3,591.31 | $6,506.18 | $0.00 |
| 08/18/15 | | REVERSAL PAYMET | 10/1/2013 | $12,455.00 | -$302.07 | -$702.22 | -$236.79 | $269,651.57 | -$3,828.10 | $6,506.18 | $0.00 |
| 08/18/15 | | REVERSAL PAYMET | 9/1/2013 | $12,455.00 | -$301.29 | -$703.00 | -$254.63 | $269,952.86 | -$4,082.73 | $6,506.18 | $0.00 |
| 08/18/15 | $1,258.92 | PAYMENT RECEIVE | 9/1/2013 | $11,196.08 | $301.29 | $703.00 | $254.63 | $269,651.57 | -$3,828.10 | $6,506.18 | $0.00 |
| 08/18/15 | $1,258.92 | PAYMENT RECEIVE | 10/1/2013 | $9,937.16 | $302.07 | $702.22 | $236.79 | $269,349.59 | -$3,591.31 | $6,506.18 | $0.00 |
| 08/18/15 | $1,258.92 | PAYMENT RECEIVE | 11/1/2013 | $8,678.24 | $302.86 | $701.43 | $247.83 | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 09/01/15 | $1,258.92 | PAYMENT RECEIVE | 12/1/2013 | $7,419.32 | $303.65 | $700.64 | $254.63 | $268,742.99 | -$3,088.85 | $6,506.18 | $0.00 |
| 09/01/15 | $1,250.44 | PAYMENT DUE | | $8,669.76 | | | | $268,742.99 | -$3,088.85 | $6,506.18 | $0.00 |
| 09/14/15 | | $28.00 FC FEES | | $8,669.76 | | | -$28.00 | $268,742.99 | -$3,088.85 | $6,478.18 | $0.00 |
| 10/01/15 | $1,250.44 | PAYMENT DUE | | $9,920.20 | | | | $268,742.99 | -$3,088.85 | $6,478.18 | $0.00 |
| 10/21/15 | $1,258.92 | PAYMENT RECEIVE | 1/1/2014 | $8,661.28 | $304.44 | $699.85 | $254.63 | $268,438.55 | -$2,834.22 | $6,478.18 | $0.00 |
| 11/01/15 | $1,250.44 | PAYMENT DUE | | $9,911.72 | | | | $268,438.55 | -$2,834.22 | $6,478.18 | $0.00 |
| 11/03/15 | $1,258.92 | PAYMENT RECEIVE | 2/1/2014 | $8,652.80 | $305.23 | $699.06 | $254.63 | $268,133.32 | -$2,579.59 | $6,478.18 | $0.00 |
| 12/01/15 | $1,250.44 | PAYMENT DUE | | $9,903.24 | | | | $268,133.32 | -$2,579.59 | $6,478.18 | $0.00 |
| 12/30/15 | $1,258.92 | PAYMENT RECEIVE | 3/1/2014 | $8,644.32 | $306.03 | $698.26 | $254.63 | $267,827.29 | -$2,324.96 | $6,478.18 | $0.00 |
| 01/01/16 | $1,250.44 | PAYMENT DUE | | $9,894.76 | | | | $267,827.29 | -$2,324.96 | $6,478.18 | $0.00 |
| 02/01/16 | $1,250.44 | PAYMENT DUE | | $11,145.20 | | | | $267,827.29 | -$2,324.96 | $6,478.18 | $0.00 |
| 02/02/16 | | $1,669.00 HAZARD INS DISB | | $11,145.20 | | | -$1,669.00 | $267,827.29 | -$3,993.96 | $6,478.18 | $0.00 |
| 02/04/16 | | $726.06 COUNTY TAX DISB | | $11,145.20 | | | -$726.06 | $267,827.29 | -$4,720.02 | $6,478.18 | $0.00 |
| 02/26/16 | $1,258.92 | PAYMENT RECEIVE | 4/1/2014 | $9,886.28 | $306.82 | $697.47 | $254.63 | $267,520.47 | -$4,465.39 | $6,478.18 | $0.00 |
| 03/01/16 | $1,250.44 | PAYMENT DUE | | $11,136.72 | | | | $267,520.47 | -$4,465.39 | $6,478.18 | $0.00 |
| 04/01/16 | $1,258.92 | PAYMENT RECEIVE | 5/1/2014 | $9,877.80 | $307.62 | $696.67 | $254.63 | $267,212.85 | -$4,210.76 | $6,478.18 | $0.00 |
| 04/01/16 | $1,250.44 | PAYMENT RECEIVE | 6/1/2014 | $8,627.36 | $308.42 | $695.87 | $246.15 | $266,904.43 | -$3,964.61 | $6,478.18 | $0.00 |
| 04/01/16 | $1,250.44 | PAYMENT DUE | | $9,877.80 | | | | $266,904.43 | -$3,964.61 | $6,478.18 | $0.00 |
| 04/25/16 | $1,250.44 | PAYMENT RECEIVE | 7/1/2014 | $8,627.36 | $309.23 | $695.06 | $246.15 | $266,595.20 | -$3,718.46 | $6,478.18 | $0.00 |
| 04/25/16 | $1,250.44 | PAYMENT RECEIVE | 8/1/2014 | $7,376.92 | $310.03 | $694.26 | $246.15 | $266,285.17 | -$3,472.31 | $6,478.18 | $0.00 |

Case 17-13167-MER   Claim 6   Filed 12/03/17   Desc Main Document   Page 7 of 55

| Date | Amt1 | Amt2 | Description | Date2 | Balance | Amt3 | Amt4 | Amt5 | Amt6 | Col A | Col B | Col C | Col D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/03/16 | $1,250.44 | | PAYMENT DUE | | $8,627.36 | | | | | $266,285.17 | -$3,472.31 | $6,478.18 | $0.00 |
| 05/10/16 | | $850.00 BK FEES | | | $8,627.36 | | | | $850.00 | $266,285.17 | -$3,472.31 | $7,328.18 | $0.00 |
| 05/13/16 | | $726.06 COUNTY TAX DISB | | | $8,627.36 | | | -$776.06 | | $266,285.17 | -$4,198.37 | $7,328.18 | $0.00 |
| 05/18/16 | | $1,264.24 | PARTIAL PAYMENT | | $7,363.12 | | | | $1,264.24 | $256,285.17 | -$4,198.37 | $7,328.18 | $1,264.24 |
| 05/17/16 | | | PAYMENT RECEIVE | 9/1/2014 | $7,363.12 | $310.84 | $693.45 | $245.15 | -$1,250.44 | $265,974.33 | -$3,952.22 | $7,328.18 | $13.80 |
| 06/01/16 | $1,250.44 | | PAYMENT DUE | | $8,613.56 | | | | | $265,974.33 | -$3,952.22 | $7,328.18 | $13.80 |
| 07/01/16 | $1,250.44 | | PAYMENT DUE | | $9,864.00 | | | | | $265,974.33 | -$3,952.22 | $7,328.18 | $13.80 |
| 08/01/16 | $1,250.44 | | PAYMENT DUE | | $11,114.44 | | | | | $265,974.33 | -$3,952.22 | $7,328.18 | $13.80 |
| 08/08/16 | | | PAYMENT RECEIVE | 10/1/2014 | $11,114.44 | $311.65 | $697.64 | $245.15 | | $265,662.68 | -$3,706.07 | $7,328.18 | $13.80 |
| 09/01/16 | $1,264.38 | | PAYMENT DUE | | $12,378.82 | | | | | $265,662.68 | -$3,706.07 | $7,328.18 | $13.80 |
| 09/16/16 | | $942.79 FC COSTS | | | $12,378.82 | | | | $942.79 | $265,662.68 | -$3,706.07 | $8,270.97 | $13.80 |
| 10/01/16 | $1,264.38 | | PAYMENT DUE | | $13,643.20 | | | | | $265,662.68 | -$3,706.07 | $8,270.97 | $13.80 |
| 10/11/16 | | | REVERSAL PAYMEN | 10/1/2014 | $13,643.20 | -$311.65 | -$692.64 | -$246.15 | $1,250.44 | $265,974.33 | -$3,952.22 | $8,270.97 | $1,264.24 |
| 10/11/16 | | | PAYMENT RECEIVE | 10/1/2014 | $13,643.20 | $311.65 | $992.64 | $245.15 | -$1,250.44 | $265,662.68 | -$3,706.07 | $8,270.97 | $13.80 |
| 11/01/16 | $1,264.38 | | PAYMENT DUE | | $14,907.58 | | | | | $265,662.68 | -$3,706.07 | $8,270.97 | $13.80 |
| 12/01/16 | $1,264.38 | | PAYMENT DUE | | $16,171.96 | | | | | $265,662.68 | -$3,706.07 | $8,270.97 | $13.80 |
| 12/19/16 | | $650.00 BK FEES | | | $16,171.96 | | | | $650.00 | $265,662.68 | -$3,706.07 | $8,920.97 | $13.80 |
| 01/01/17 | $1,264.38 | | PAYMENT DUE | | $17,436.34 | | | | | $265,662.68 | -$3,706.07 | $8,920.97 | $13.80 |
| 01/13/17 | | $1,645.00 HAZARD INS DISB | | | $17,436.34 | | | -$1,645.00 | | $265,662.68 | -$5,351.07 | $8,920.97 | $13.80 |
| 02/01/17 | $1,264.38 | | PAYMENT DUE | | $18,700.72 | | | | | $265,662.68 | -$5,351.07 | $8,920.97 | $13.80 |
| 02/06/17 | | $740.92 COUNTY TAX DISB | | | $18,700.72 | | | -$740.92 | | $265,662.68 | -$6,091.99 | $8,920.97 | $13.80 |
| 02/23/17 | | | PARTIAL PAYMENT | | $18,700.72 | | | | $45.45 | $265,662.68 | -$6,091.99 | $8,920.97 | $59.25 |
| 03/01/17 | $1,264.38 | | PAYMENT DUE | | $19,965.10 | | | | | $265,662.68 | -$6,091.99 | $8,920.97 | $59.25 |
| 04/01/17 | $1,264.38 | | PAYMENT DUE | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,920.97 | $59.25 |
| 04/07/17 | | $15.00 FC COSTS | | | $21,229.48 | | | | $15.00 | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| 04/10/17 | | | BANKRUPTCY FILED | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |
| | | | | | $21,229.48 | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $59.25 |

Cop

# FIXED/ADJUSTABLE RATE NOTE

(LIBOR One-Year Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

February 27, 2004      Steamboat Springs           , CO
   *[Date]*                 *[City]*                 *[State]*

50655 Bemoten Drive, Steamboat Springs, CO  80487
                    *[Property Address]*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 333,000.00                    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        4.750     %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on April 1 2004 , I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on        March 1 2034       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50704-0780, ATTN: Payment Processing                         or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $  1,737.09            . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of March,                   2009 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

LOAN NO:
MULTISTATE FIXED/ADJUSTABLE RATE NOTE -
WSJ One-Year LIBOR *Single Family - Fannie Mae*
Uniform Instrument  Form 3528

*(Page 1 of 4)*      Initials:
GMACM-CNM.1379 (0204)

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new Interest rate by adding Two and 375/1000 percentage points ( 2.375 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.750 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change, and the amount of my monthly payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Cop

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)    Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)    When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

Case 17-13167-MER   Claim 6   Filed 12/01/17   Desc Main Document   Page 41 of 95

(Page 5 of 50)

Cop

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  (Seal)
Jill F. Clow                    -Borrower

_____  (Seal)
Timothy A. Reel                 -Borrower

_____  (Seal)
                                -Borrower

_____  (Seal)
                                -Borrower



[Sign Original Only]

LOAN NO: ███████████
MULTISTATE ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family - Fannie Mae Uniform Instrument Form 3528 6/01
GMACM-CNM.1379 (0204)                    (Page 4 of 4)

# EXHIBIT

## C

| Fill in this information to identify the case: |
|---|

Debtor 1  JILL CLOW

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  District of Colorado
(State)

Case number  17-13167-MER

## Official Form 410

## Amended Proof of Claim

04/16

**Read the Instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1 | Identify the Claim | | |
|---|---|---|---|
| 1. | Who is the current creditor? | MTGLQ INVESTORS, L.P. | |
| | | Name of the current creditor (the person or entity to be paid for this claim) | |
| | | Other names the creditor used with the debtor _____ | |
| 2. | Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? _____ | |
| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>Selene Finance, LP<br>Name<br><br>9990 Richmond Avenue, Suite 400<br>Number       Street<br><br>Houston, TX 77042<br>City          State          Zip Code<br><br>Contact phone 877-735-3637<br><br>Contact email<br>Uniform claim identifier for electronic payments in chapter 13 (if you use one): | Where should payments to the creditor be sent? (if different)<br><br>Selene Finance, LP<br>Name<br>Attn: BK Dept.<br>9990 Richmond Avenue, Suite 400<br>Number       Street<br><br>Houston, TX 77042<br>City          State          Zip Code<br><br>Contact phone 877-735-3637<br><br>Contact email |
| 4. | Does this claim amend one already filed? | ☐ No<br>☒ Yes.   Claim number on court claims registry (if known) 6-2 | Filed on 12/01/2017<br>MM / DD / YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes.   Who made the earlier filing? _____ | |

**Part 2** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 2034 Atty File #: 17-017225 |

| | | |
|---|---|---|
| 7. How much is the claim? | $301,857.43 | Does this amount include interest or other charges?<br>☐ No<br>☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Mortgage Note/Loan |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☐ No<br>☒ Yes. The claim is secured by a lien on property.<br><br>Nature of property:<br><br>☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br>50655 SEMOTAN DRIVE, STEAMBOAT SPRINGS, CO 80487<br><br>Basis for perfection: Deed of Trust recorded at office of Clerk and Recorder<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Estimated Value of property: $____<br><br>Amount of the claim that is secured: $301,857.43<br><br>Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7)<br><br>Amount necessary to cure any default as of the date of the petition: $47,722.32<br><br>Annual Interest Rate (when case was filed) 3.125%<br>☒ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☒ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☒ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | Amount entitled to priority |
|---|---|---|

☐ Yes. *Check all that apply*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ _____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5)    $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies.    $ _____

*Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment

---

## Part 3    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor

☒ I am the creditor's attorney or authorized agent

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   3/6/19
                    MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Nicholas H. Santarelli #46592 |
|---|---|
| | First name    Middle name    Last name |
| Title | Attorney for Creditor |
| Company | Janeway Law Firm, P.C. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 9800 S. Meridian Blvd., Suite 400 |
| | Number    Street |
| | Englewood, CO 80112 |
| | City    State    Zip Code |
| Contact Phone | (303) 706-9990    Email bankruptcy@janewaylaw.com |

| Date | Amount | | Description | Date | | | | | Balance | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/23/14 | | | -$15.75 ATTY FCL FEE | | | | | -$15.75 | $269,952.36 | -$1,274.77 | $7,017.50 | $0.00 |
| 05/01/14 | $1,250.44 | | PAYMENT DUE | | $15,017,004.00 | | | | $269,952.86 | -$1,274.77 | $7,017.50 | $0.00 |
| 05/16/14 | | | $714.40 COUNTY TAX DISB | | | | | -$714.40 | $269,952.86 | -$1,989.17 | $7,017.50 | $0.00 |
| 06/01/14 | $1,250.44 | | PAYMENT DUE | | $16,265.96 | | | | $269,952.86 | -$1,989.17 | $7,017.50 | $0.00 |
| 06/16/14 | | | $300.00 ATTY BK/MFR FEE | | | | | $300.00 | $269,952.80 | -$1,989.17 | $7,317.50 | $0.00 |
| 06/25/14 | | | $6.00 FC POSTING COSTS | | | | | $6.00 | $269,952.86 | -$1,989.17 | $7,323.50 | $0.00 |
| 06/25/14 | | | $1,012.13 FC SHERIFFS FEES & COSTS | | | | | $1,012.13 | $269,952.86 | -$1,989.17 | $3,335.63 | $0.00 |
| 07/01/14 | $1,250.44 | | PAYMENT DUE | | $17,624.88 | | | | $269,952.86 | -$1,989.17 | $3,335.63 | $0.00 |
| 07/14/14 | | | $300.00 ATTY BK/MFR FEE | | | | | $300.00 | $269,952.86 | -$1,989.17 | $3,635.63 | $0.00 |
| 07/24/14 | | | $15.00 PROPERTY INSPECTIONS | | | | | $15.00 | $269,952.86 | -$1,989.17 | $3,650.63 | $0.00 |
| 08/01/14 | $1,250.44 | | PAYMENT DUE | | $18,883.80 | | | | $269,952.86 | -$1,989.17 | $3,650.63 | $0.00 |
| 07/15/14 | | | $350.00 BK POC FEE | | | | | $350.00 | $269,952.86 | -$1,989.17 | $4,000.63 | $0.00 |
| 09/02/14 | $1,250.44 | | PAYMENT DUE | | $20,142.72 | | | | $769,952.86 | -$1,989.17 | $4,000.63 | $0.00 |
| 10/02/14 | $1,250.44 | | PAYMENT DUE | | $21,401.64 | | | | $269,952.86 | -$1,989.17 | $4,000.63 | $0.00 |
| 11/01/14 | $1,250.44 | | PAYMENT DUE | | $22,660.56 | | | | $269,952.86 | -$1,989.17 | $4,000.63 | $0.00 |
| 11/05/14 | | | $500.00 BK OBJECTION FEE | | | | | $500.00 | $269,952.86 | -$1,989.17 | $4,500.63 | $0.00 |
| 11/18/14 | | | $15.00 PROPERTY INSPECTIONS | | | | | $15.00 | $269,952.86 | -$1,989.17 | $4,515.63 | $0.00 |
| 12/01/14 | $1,250.44 | | PAYMENT DUE | | $23,919.48 | | | | $269,952.86 | -$1,989.17 | $4,515.63 | $0.00 |
| 12/02/14 | | | ESCROW DEPOSIT | | | | | $1,001.16 | $269,952.86 | -$988.01 | $4,515.63 | $0.00 |
| 01/01/15 | $1,250.44 | | PAYMENT DUE | | $25,178.40 | | | | $269,952.86 | -$988.01 | $4,515.63 | $0.00 |
| 01/22/15 | | | $318.75 ATTY FCL FEE | | | | | $318.75 | $269,952.86 | -$988.01 | $4,834.38 | $0.00 |
| 02/01/15 | $1,250.44 | | PAYMENT DUE | | $26,437.32 | | | | $269,952.86 | -$988.01 | $4,834.38 | $0.00 |
| 02/02/15 | | | $1,677.00 HAZARD INS DISB | | | | | -$1,667.00 | $269,952.86 | -$2,655.01 | $4,834.38 | $0.00 |
| 02/03/15 | | | $5.00 PROPERTY INSPECTIONS | | | | | $15.00 | $269,952.86 | -$2,655.01 | $4,849.38 | $0.00 |
| 02/04/15 | | | $726.18 COUNTY TAX DISB | | | | | -$726.18 | $269,952.86 | -$3,381.19 | $4,849.38 | $0.00 |
| 02/11/15 | | | $250.00 ATTY BK/MFR FEE | | | | | $250.00 | $269,952.86 | -$3,381.19 | $5,099.38 | $0.00 |
| 02/28/15 | | | $300.00 ATTY BK/MFR FEE | | | | | $300.00 | $269,952.86 | -$3,381.19 | $5,399.38 | $0.00 |
| 03/01/15 | $1,250.44 | | PAYMENT DUE | | $27,696.24 | | | | $269,952.86 | -$3,381.19 | $5,399.38 | $0.00 |
| 03/27/15 | | | -$69.00 PROPERTY INSPECTIONS | | | | | -$69.00 | $269,952.86 | -$3,381.19 | $5,330.38 | $0.00 |
| 04/01/15 | $1,250.44 | | PAYMENT DUE | | $28,955.16 | | | | $269,952.36 | -$3,381.19 | $5,330.38 | $0.00 |
| 04/27/15 | | $1,250.00 | RECEIVED PAYMENT | | | | | | $269,952.86 | -$3,381.19 | $5,330.38 | $1,250.00 |
| 04/27/15 | | $1,250.00 | RECEIVED PAYMENT | | | | | | $269,952.86 | -$3,381.19 | $5,330.38 | $2,500.00 |
| 04/27/15 | | $1,333.32 | RECEIVED PAYMENT | 9/1/2013 | $27,696.24 | $301.29 | $703.00 | $254.63 | $269,651.57 | -$3,128.56 | $5,330.38 | $2,576.00 |
| 04/29/15 | | $1,334.32 | REVERSAL PAYMENT | 7/1/2013 | | -$301.29 | -$703.00 | -$254.63 | $269,952.86 | -$3,381.19 | $5,330.38 | $2,500.00 |
| 05/01/15 | $1,250.44 | | PAYMENT DUE | | $30,214.08 | | | | $769,952.86 | -$3,381.19 | $5,330.38 | $2,500.00 |
| 05/19/15 | | | $726.18 COUNTY TAX DISB | | | | | -$726.18 | $269,952.86 | -$4,107.37 | $5,330.38 | $2,500.00 |
| 05/26/15 | | | SUSPENSE APPLIED | 8/1/2013 | $28,955.16 | $301.29 | $703.00 | $254.63 | -$1,258.92 $269,651.57 | -$3,852.74 | $5,330.38 | $1,241.08 |
| 05/29/15 | | | SUSPENSE APPLIED | 9/1/2013 | $27,696.24 | $303.07 | $702.22 | $236.79 | -$1,241.08 $249,349.50 | -$3,615.95 | $5,330.38 | $0.00 |
| 06/01/15 | $1,250.44 | | PAYMENT DUE | | | | | | $249,349.50 | -$3,615.95 | $5,330.38 | $0.00 |
| 06/01/15 | | | $260.00 BK POC FEE | | | | | $700.00 | $269,349.50 | -$3,615.95 | $5,530.38 | $0.00 |
| 06/03/15 | | | $15.00 PROPERTY INSPECTIONS | | | | | $15.00 | $269,349.50 | -$3,615.95 | $5,545.38 | $0.00 |
| 06/15/15 | | | $412.50 ATTY FCL FEE | | | | | $412.50 | $269,349.50 | -$3,615.95 | $3,957.88 | $0.00 |
| 06/13/15 | | | $12.00 FC POSTING COSTS | | | | | $12.00 | $269,349.50 | -$3,615.95 | $5,969.88 | $0.00 |
| 06/22/15 | | | REVERSAL PAYMENT | 8/1/2013 | | -$301.29 | -$701.00 | -$254.63 | $1,258.92 $269,650.79 | -$3,870.58 | $5,969.88 | $1,258.92 |
| 06/22/15 | | | REVERSAL PAYMENT | 7/1/2013 | | -$302.07 | -$702.22 | -$236.79 | $1,241.08 $269,952.86 | -$4,107.37 | $5,969.88 | $2,500.00 |
| 06/23/15 | | | SUSPENSE APPLIED | 8/1/2013 | | $101.29 | $703.00 | $254.63 | -$1,258.92 $269,651.57 | -$3,852.74 | $5,969.88 | $1,241.08 |
| 06/24/15 | | | SUSPENSE APPLIED | 9/1/2013 | | $302.07 | $702.22 | $254.63 | -$1,241.00 $269,349.50 | -$3,598.11 | $5,969.88 | $0.00 |
| 06/24/15 | | | REVERSAL PAYMENT | 8/1/2013 | | -$302.07 | -$702.22 | -$254.63 | $1,258.92 $202,651.57 | -$3,852.74 | $5,969.88 | $1,258.92 |
| 06/24/15 | | | REVERSAL PAYMENT | 7/1/2013 | | -$301.29 | -$703.00 | -$254.63 | $2,258.92 $269,952.86 | -$4,107.37 | $5,969.88 | $2,517.84 |
| 07/01/15 | $1,250.44 | | PAYMENT DUE | | $28,955.16 | | | | $269,952.86 | -$4,107.37 | $5,969.88 | $2,517.84 |
| 07/07/15 | | | SUSPENSE APPLIED | 8/1/2013 | | $301.29 | $703.00 | $254.63 | -$1,258.92 $269,651.57 | -$3,852.74 | $5,969.88 | $1,258.92 |
| 07/07/15 | | | SUSPENSE APPLIED | 9/1/2013 | | $302.07 | $702.22 | $254.68 | -$1,258.92 $269,349.50 | -$3,598.11 | $5,969.88 | $0.00 |
| 07/07/15 | | $1,252.12 | RECEIVED PAYMENT | 10/1/2013 | | $302.86 | $701.43 | $247.83 | $269,046.64 | -$3,350.28 | $5,969.88 | $0.00 |
| 07/14/15 | | | REVERSAL PAYMENT | 9/4/2013 | | -$302.86 | -$701.43 | -$247.83 | $1,252.12 $269,349.50 | -$3,598.11 | $5,969.88 | $1,252.12 |
| 07/14/15 | | | REVERSAL PAYMENT | 8/1/2013 | | -$302.07 | -$702.22 | -$254.63 | $1,258.92 $269,651.57 | -$3,852.74 | $5,969.88 | $2,511.04 |
| 07/14/15 | | | REVERSAL PAYMENT | 7/1/2013 | | -$301.29 | -$703.00 | -$254.63 | $1,265.72 $269,952.86 | -$4,107.37 | $5,969.88 | $3,776.76 |
| 07/20/15 | | $1,258.92 | SUSPENSE APPLIED | 8/1/2013 | | $301.29 | $703.00 | $254.63 | -$1,258.92 $260,651.57 | -$3,852.74 | $5,989.88 | $2,517.84 |
| 07/20/15 | | $1,258.92 | SUSPENSE APPLIED | 9/1/2013 | | $302.07 | $702.22 | $254.63 | -$1,258.92 $269,349.50 | -$3,598.11 | $5,989.88 | $1,258.92 |
| 07/20/15 | | $1,258.92 | SUSPENSE APPLIED | 10/1/2013 | $27,696.24 | $302.86 | $701.43 | $254.63 | -$1,258.92 $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 07/22/15 | | | $536.30 MTHLY FP GEO HAS INS | | | | | $536.30 | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 08/01/15 | $1,250.44 | | PAYMENT DUE | | $28,955.16 | | | | $269,046.64 | -$3,343.48 | $6,506.18 | $0.00 |
| 08/18/15 | | $1,252.12 | RECEIVED PAYMENT | | | | | | $1,252.12 $269,046.64 | -$3,343.48 | $6,506.18 | $1,252.12 |
| 08/31/15 | | $1,264.24 | RECEIVED PAYMENT | | | | | | $1,264.24 $269,046.64 | -$3,343.48 | $6,506.18 | $2,516.36 |
| 09/01/15 | | $1,264.24 | SUSPENSE APPLIED | 11/1/2013 | $27,696.24 | $303.65 | $700.64 | $254.63 | -$1,258.97 $268,742.99 | -$3,088.85 | $6,506.18 | $1,257.44 |

Case 17-13167-MER Claim 6 Filed 03/05/18 Desc Main Document Page 5 of 48

| Date | Amt | Amt | Description | Date | Amt | Amt | Amt | Amt | Date2 | Amt | Amt | Amt | Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/01/15 | $1,250.44 | | PAYMENT DUE | | $28,955.16 | | | | | $268,742.99 | -$3,088.85 | $6,506.18 | $1,257.44 |
| 09/14/15 | | | -$28.00 ATTY FCL FEE | | | | | -$28.00 | | $268,742.99 | -$3,088.85 | $6,478.18 | $1,257.44 |
| 10/01/15 | $1,250.44 | | PAYMENT DUE | | $30,014.08 | | | | | $268,742.99 | -$3,088.85 | $6,478.18 | $1,257.44 |
| 10/20/15 | | $1,164.24 | RECEIVED PAYMENT | | | | | | $1,264.24 | $268,742.99 | -$3,088.85 | $6,478.18 | $2,521.68 |
| 10/21/15 | | | SUSPENSE APPLIED | 12/1/2013 | $28,955.16 | $304.44 | $699.85 | $254.68 | -$1,258.92 | $268,438.55 | -$2,834.22 | $6,478.18 | $1,262.76 |
| 11/01/15 | $1,250.44 | | PAYMENT DUE | | $30,214.08 | | | | | $268,438.55 | -$2,834.22 | $6,478.18 | $1,262.76 |
| 11/02/15 | | $1,264.24 | RECEIVED PAYMENT | | | | | | $1,264.24 | $268,438.10 | -$2,834.22 | $6,478.18 | $2,527.00 |
| 11/03/15 | | | SUSPENSE APPLIED | 1/1/2014 | $28,955.16 | $305.23 | $699.06 | $254.68 | -$1,258.92 | $268,133.32 | -$2,579.59 | $6,478.18 | $1,268.08 |
| 12/01/15 | $1,250.44 | | PAYMENT DUE | | | | | | | $268,133.32 | -$2,579.59 | $6,478.18 | $1,268.08 |
| 12/29/15 | | $1,264.24 | RECEIVED PAYMENT | | | | | | $1,264.24 | $268,133.32 | -$2,579.59 | $6,478.18 | $2,532.32 |
| 12/30/15 | | | SUSPENSE APPLIED | 2/1/2014 | $17,696.24 | $306.03 | $698.26 | $254.68 | -$1,258.92 | $267,827.29 | -$2,324.96 | $6,478.18 | $1,273.40 |
| 01/01/16 | $1,250.44 | | PAYMENT DUE | | $28,955.16 | | | | | $267,827.29 | -$2,324.96 | $6,478.18 | $1,273.40 |
| 02/01/16 | $1,350.44 | | PAYMENT DUE | | $30,214.08 | | | | | $267,827.29 | -$2,324.96 | $6,478.18 | $1,273.40 |
| 02/02/16 | | | $1,669.00 HAZARD INS DISB | | | | | -$1,669.00 | | $267,827.29 | -$3,993.96 | $6,478.18 | $1,273.40 |
| 02/04/16 | | | $726.06 COUNTY TAX DISB | | | | | -$726.06 | | $267,827.29 | -$4,720.02 | $6,478.18 | $1,273.40 |
| 02/25/16 | | $1,264.25 | RECEIVED PAYMENT | | | | | | $1,264.25 | $267,827.29 | -$4,720.02 | $6,478.18 | $2,537.65 |
| 02/26/16 | | | SUSPENSE APPLIED | 3/1/2014 | $28,955.16 | $306.82 | $697.47 | $254.68 | -$1,258.92 | $267,520.47 | -$4,465.39 | $6,478.18 | $1,278.73 |
| 03/01/16 | $1,250.44 | | PAYMENT DUE | | | | | | | $267,520.47 | -$4,465.39 | $6,478.18 | $1,278.73 |
| 04/01/16 | | $1,264.24 | RECEIVED PAYMENT | | | | | | $1,264.24 | $267,520.47 | -$4,465.39 | $6,478.18 | $2,542.97 |
| 04/01/16 | | $1,264.24 | RECEIVED PAYMENT | | | | | | $1,264.24 | $267,520.47 | -$4,465.39 | $6,478.18 | $3,807.21 |
| 04/01/16 | | $1,264.24 | SUSPENSE APPLIED | 4/1/2014 | $27,696.24 | $307.62 | $696.67 | $254.63 | -$1,258.92 | $267,212.85 | -$4,210.76 | $6,478.18 | $2,548.29 |
| 04/01/16 | | | SUSPENSE APPLIED | 5/1/2014 | $26,437.32 | $308.42 | $695.87 | $246.15 | -$1,250.44 | $266,904.43 | -$3,964.61 | $6,478.18 | $1,297.85 |
| 04/01/16 | $1,250.44 | | PAYMENT DUE | | $27,696.24 | | | | | $266,904.43 | -$3,964.61 | $6,478.18 | $1,297.85 |
| 04/25/16 | | $1,264.24 | RECEIVED PAYMENT | | | | | | $1,264.24 | $266,904.43 | -$3,964.61 | $6,478.18 | $2,562.09 |
| 04/25/16 | | $1,264.24 | RECEIVED PAYMENT | | | | | | $1,264.24 | $266,904.43 | -$3,964.61 | $6,478.18 | $3,826.33 |
| 04/25/16 | | | SUSPENSE APPLIED | 6/1/2014 | $26,437.32 | $309.23 | $695.06 | $246.15 | -$1,250.44 | $266,595.20 | -$3,718.46 | $6,478.18 | $2,575.99 |
| 04/25/16 | | | SUSPENSE APPLIED | 7/1/2014 | $25,178.40 | $310.03 | $694.26 | $246.15 | -$1,250.44 | $266,285.17 | -$3,472.31 | $6,478.18 | $1,325.45 |
| 05/01/16 | $1,250.44 | | PAYMENT DUE | | $26,437.32 | | | | | $266,285.17 | -$3,472.31 | $6,478.18 | $1,325.45 |
| 05/10/16 | | | $850.00 ATTY BK/MFR FEE | | | | | $850.00 | | $265,285.17 | -$3,472.31 | $7,328.18 | $1,325.45 |
| 05/13/16 | | | $726.06 COUNTY TAX DISB | | | | | -$726.06 | | $266,285.17 | -$4,198.37 | $7,328.18 | $1,325.45 |
| 05/17/16 | | $1,260.24 | RECEIVED PAYMENT | | | | | | $1,264.24 | $265,285.17 | -$4,198.37 | $7,328.18 | $2,589.09 |
| 05/17/16 | | | SUSPENSE APPLIED | 8/1/2014 | $25,178.40 | $310.84 | $693.45 | $246.15 | -$1,250.44 | $265,974.33 | -$3,952.22 | $7,328.18 | $1,339.25 |
| 06/01/16 | $1,250.44 | | PAYMENT DUE | | $26,437.32 | | | | | $265,974.33 | -$3,952.22 | $7,328.18 | $1,339.25 |
| 07/01/16 | $1,250.44 | | PAYMENT DUE | | $27,696.24 | | | | | $265,974.33 | -$3,952.22 | $7,328.18 | $1,339.25 |
| 08/01/16 | $1,250.44 | | PAYMENT DUE | | $28,955.16 | | | | | $265,974.33 | -$3,952.22 | $7,328.18 | $1,320.25 |
| 08/08/16 | | | SUSPENSE APPLIED | 9/1/2014 | $27,696.24 | $311.65 | $692.64 | $246.15 | -$1,250.44 | $265,662.68 | -$3,705.07 | $7,328.16 | $88.81 |
| 09/01/16 | $1,264.38 | | PAYMENT DUE | | $28,960.62 | | | | | $265,662.68 | -$3,705.07 | $7,328.15 | $88.81 |
| 09/26/16 | | | $942.79 FC PUBLICATION NOTICE COSTS | | | | | $942.79 | | $265,662.68 | -$3,706.07 | $8,270.97 | $88.81 |
| 10/01/16 | $1,264.38 | | PAYMENT DUE | | $30,225.00 | | | | | $265,662.68 | -$3,706.07 | $8,270.97 | $88.81 |
| 10/11/16 | | | REVERSAL PAYMENT | 8/1/2014 | $31,475.44 | -$311.65 | -$692.64 | -$246.15 | $1,250.44 | $265,974.33 | -$3,952.22 | $8,270.97 | $1,339.25 |
| 10/11/16 | | | SUSPENSE APPLIED | 9/1/2014 | $30,225.00 | $311.65 | $692.64 | $246.15 | -$1,250.44 | $265,662.68 | -$3,706.07 | $8,770.97 | $88.81 |
| 11/01/16 | $1,264.38 | | PAYMENT DUE | | $32,552.26 | | | | | $265,662.68 | -$3,706.07 | $8,270.97 | $88.81 |
| 12/01/16 | $1,264.38 | | PAYMENT DUE | | $33,817.64 | | | | | $265,662.68 | -$3,706.07 | $8,270.97 | $88.81 |
| 12/19/16 | | | $650.00 BK POC FEE | | | | | $650.00 | | $265,662.68 | -$3,706.07 | $8,920.97 | $88.81 |
| 01/01/17 | $1,264.38 | | PAYMENT DUE | | $35,082.02 | | | | | $265,662.68 | -$3,706.07 | $8,920.97 | $88.81 |
| 01/31/17 | | | $1,645.00 HAZARD INS DISB | | | | | -$1,645.00 | | $265,662.68 | -$5,351.07 | $8,920.97 | $88.81 |
| 02/01/17 | $1,264.38 | | PAYMENT DUE | | $36,346.40 | | | | | $265,662.68 | -$5,351.07 | $8,920.97 | $88.81 |
| 02/06/17 | | | $740.92 COUNTY TAX DISB | | | | | $740.92 | | $265,662.68 | -$6,091.99 | $8,920.97 | $88.81 |
| 03/01/17 | $1,264.38 | | PAYMENT DUE | | $37,610.78 | | | | | $265,662.68 | -$6,091.99 | $8,920.97 | $88.81 |
| 04/01/17 | $1,264.38 | | PAYMENT DUE | | $38,875.16 | | | | | $265,662.68 | -$6,091.99 | $8,920.97 | $88.81 |
| 04/07/17 | | | $15.00 LTE/UPDTE TITLE | | | | | $15.00 | | $265,662.68 | -$6,091.99 | $8,935.97 | $88.81 |
| 04/10/17 | | | BANKRUPTCY FILED | | | | | | | $265,662.68 | -$6,091.99 | $8,935.97 | $88.81 |

# FIXED/ADJUSTABLE RATE NOTE

## (LIBOR One-Year Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

February 27, 2004    Steamboat Springs         .  CO
        *[Date]*                    *[City]*                  *[State]*

          50655 Semotan Drive, Steamboat Springs, CO  80487
                          *[Property Address]*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 333,000.00            (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

                    GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     4.750     %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on April 1 . 2004 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 1 . 2034 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50704-0780, ATTN: Payment Processing                     or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,737.09            . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on on the first day of March, 2009 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE -
WSJ One-Year LIBOR  Single Family -- Fannie Mae
Uniform Instrument   Form 3528  6/01            215849165

*(Page 1 of 4)*       Initials

GMACM-CNM.1379 (0104)



**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and 375/1000

percentage points ( 2.375 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 6.750 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change, and the amount of my monthly payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)     Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)     When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
Jill X. Clow                            -Borrower

_____ (Seal)
Timothy A. Reel                         -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

PAY TO THE ORDER OF

[Sign Original Only]